# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MISSOURI

## WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL L. HAMMOND, et al., | ) | |
| Plaintiffs, | ) | Case No. 14-00613-CV-W-BP |
| V | ) | |
| US BANK, N.A, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO DISMISS PURSUANT TO CIVIL RULE 12 (b)(1) DUE TO A LACK OF STANDING FOR THE FORECLOSING PARTY LEAVING THIS COURT WITHOUT SUBJECT MATTER JURISDICTION OVER THE ALLEGED NON–JUDICIAL FORECLOSURE WHICH IS THE CHALLENGED ACTION OF THIS LAWSUIT PURSUANT TO CIVIL RULE 12(b)(1), CIVIL RULE 17(A), CIVIL RULE 12(h)(3), THE DUE PROCESS CLAUSE OF THE 5TH AND 17TH AMENDMENTS TO THE U.S. CONSTITUTION AND CIVIL RULE 60**

Comes Now, Plaintiffs and for their Motion to Dismiss and Set Aside the Void Ab Initio subject Fraudulent Foreclosure in this instant case due to the failure of this court to determine sua sponte whether GMAC Mortgage, LLC had met the constitutional, irreducible minimum requirements for standing to foreclose on the subject property by claiming and proving it had suffered an "Injury in Fact" that is fairly traceable through concrete and substantive evidence to the Plaintiffs and/or the subject property legally known as Lot 122; East Lake Village, a subdivision in Lees Summit, MO in its' Answer to Plaintiffs' Complaint. GMAC Mortgage, LLC did not claim that it had suffered an injury in fact leaving GMAC Mortgage, LLC without Standing to Collect monies against any alleged Promissory Note which is evidence any alleged debt, to declare default, or to foreclose on the subject property to collect on any alleged debt claims.

An Injury in Fact has not been claimed, and leaving this court without Subject Matter Jurisdiction over the matter and no discretion but to dismiss and declare the challenged action of alleged foreclosure void pursuant to Civil Rule 12 (b)(1), Civil Rule 17(A), Civil Rule 12 (h)(3), the Due Process Clause of the 5th and 14th Amendment, and Civil Rule 60.

Plaintiffs have filed to Invoke their Rights to Challenge the Standing of the Defendants at any Time Under Article III of the United States Constitution earlier in this court which failed to mention or give any recognition of having even read Plaintiffs' invocation of this fundamental constitutional civil right, which was foremost the responsibility of this court. Plaintiffs state as follows and the court ignores at its own peril:

1.) That Article III of the Constitution of the United States and the Supreme Court have established an irreducible minimum set of requirements for a party in a genuine dispute to establish Standing. Without which all courts in the land must acknowledge that the court has no jurisdiction to hear any merits of a case and must dismiss the subject action, in this case the void and fraudulent foreclosure of Plaintiffs' property.

1a.) That only the United States Supreme Court has original jurisdiction over constitutional question issues.

2.) That the requirements in a case of Non-Judicial Foreclosure actions are: 1. The foreclosing party must claim and prove with concrete and substantive evidence that it has sustained and Injury in Fact. 2. This Injury must be fairly traceable to the foreclosed party with concrete and substantive evidence. 3. The court must be able to redress the injury with a ruling in favor of the injured party.

3.) That if it is the alleged foreclosed party that is the claimant party then it must 1. claim and prove an injury in fact. 2. Its' injury must be fairly traceable to the foreclosing party. 3. Its' injury must be able to be redressed by the court.

**Jacqueline Gray; Windhover, Inc., Plaintiffs-Appellants, v. City of Valley Park, Missouri, Defendant-Appellee,** *United States Court of Appeals FOR THE EIGHTH CIRCUIT, No. 08-1681, On Appeal from the United States District Court for the Eastern District of Missouri. Submitted: December 10, 2008, Filed: June 5, 2009 (Corrected: 06/11/2009)*

4.) That the United States Supreme Court defines the requirements of Standing as:

## 3.1.B. The Constitutional and Prudential Requirements of Standing

Inherent in the constitutional limitation of judicial power on cases and controversies is the requirement of "concrete adverseness" between the parties to a lawsuit. The rise of public interest law litigation involving claims of non-economic loss has forced the Supreme Court to craft an analytical framework for determining whether the requisite adversity is present. The Court requires that plaintiffs establish that the challenged conduct caused or threatens to cause them an injury in fact to judicially cognizable interests. By establishing that they personally suffered injury, plaintiffs demonstrate that they are sufficiently associated with the controversy to be permitted to litigate it. The question of injury raises two questions – (1) what kinds of injuries count for purposes of standing and (2) how certain the injury must be if it has not yet occurred.

### 3.1.B.1. Injury in Fact

2

The Supreme Court has held that, to satisfy the injury in fact requirement, a party seeking to invoke the jurisdiction of a federal court must show three things: (1) "an invasion of a legally protected interest," (2) that is "concrete and particularized," and (3) "actual or imminent, not conjectural or hypothetical. The following section discusses several types of injuries considered by the Supreme Court in determining whether there is a legally protected interest.

### 3.1.B.1.a. Economic Interests

The Supreme Court has had no difficulty determining that economic interests are legally protected interests. More difficult is determining when economic injury that has yet to occur is sufficiently imminent and likely to confer standing. The Court has been relatively forgiving in this regard. Economic injury need not have already occurred but can result from policies that, for example, are likely to deprive the plaintiff of a competitive advantage or a bargaining chip. *In Clinton v. New York*, for instance, the Court held that New York had standing to challenge the veto of legislation permitting the state to keep disputed Medicaid funds. The veto left the state's ability to retain the funds uncertain, subject to the outcome of a request for a waiver. Despite this uncertainty, the Court regarded the "revival of a substantial contingent liability" sufficient to confer standing.

### 3.1.B.5. Injury Fairly Traceable to the Challenged Conduct

In addition to alleging injury in fact, the plaintiff must demonstrate that the injury is fairly traceable to the defendant's unlawful conduct. In cases in which the government acts against the plaintiff, causation is simple.

### 3.1.B.6. Relief Sought to Redress Injury

A corollary to the Supreme Court's requirement for standing, that the injury alleged be fairly traceable to the challenged conduct is the separate requirement that the relief sought must redress the injury. In the great majority of cases the inquiry into causation and redressability are indistinguishable. Thus, in *Warth* the Court held that there was no reason to suppose that the elimination of exclusionary zoning would enable the plaintiffs to obtain housing in Penfield. In *Eastern Kentucky Welfare Rights Organization,* the Court held that there was no reason to think that revoking the IRS Revenue Ruling at issue would assure that the next ill or injured poor person would be admitted to a hospital. Furthermore, in *Allen,* the Court held it was entirely speculative that revoking tax-exempt status for allegedly discriminatory private schools would serve to foster public school integration. What is peculiar about the Court's concern for redressability is the elevation of the question of remedial efficacy to constitutional status.

3

While the scope of equitable relief to redress unlawful governmental action has long been a matter of controversy, not until *City of Los Angeles v. Lyons* did the Court clearly articulate the requirement of remedial efficacy as a constitutional component of standing. The plaintiff in *Lyons* sought damages and injunctive relief after being choked by city police officers. He alleged that the city permitted the police department to use unnecessary choke holds indiscriminately. The Court conceded that Lyons had standing to sue for damages. However, the Court held that he lacked standing to seek injunctive relief. As an injunction would not redress his injury because it was unlikely that he would be arrested and choked again.

5.) That GMAC Mortgage, LLC has only one possible injury it can claim. That this defendant used its' money to fund the closing of the loan, or it used its' money to provide the agreed upon consideration to purchase the alleged subject Promissory Note. GMAC Mortgage, LLC has **never** stated or claimed an "Injury in Fact", nor described one. GMAC Mortgage, LLC has **never** claimed to be the Holder in Due Course. Plaintiffs understand that judges prefer the common law term of "holder" of a Note, but the Uniform Commercial Code which is the statute adopted by the State of Missouri regulating these matters defines both holder and Holder in Due Course the definitions are quite different.

**5.A) That the following is a Judge Phillip's Quote from her Order to show cause:**

*"It __seems clear__ that Plaintiffs' claims against GMAC cannot proceed. Any claims for damages __appear__ barred by the Bankruptcy Court's orders. GMAC __lacks an interest in any of the properties associated with its former mortgage business,__ so no injunctive relief can be ordered and GMAC represent that they asked Plaintiffs to dismiss this suit but Plaintiffs declined to do so. Nonetheless, given the __apparent futility__ of Plaintiff's claims, the Court __believes__ the case __should be dismissed__ and desires Plaintiffs' input in the matter.*

*5b. Plaintiffs respectfully ask the court not use a shortening of the name of the Defendant GMAC Mortgage, LLC. This motion includes an exhibit of the Missouri Secretary of State's office (hereinafter "Mo. SOS) registration of names beginning with the letters GMAC. There are multiple examples and GMAC Mortgage, LLC has never been authorized to do business in the State of Missouri. This is an intentional deception on the part of Defendants to confuse the court and the accusing parties. It has worked numerous times. There is no company registered with the Mo. SOS with the name GMAC or GMACM. (See Exhibit A- Registrations records of the Missouri Secretary of State's office)*

6.) That Plaintiffs have been clearly told that they were using conclusory language in pleadings. But, this is as conclusory a paragraph that can be stated ("seems clear", "appear barred", "apparent futility", "court believes", "the case should be dismissed", "lacks an interest in any of the properties associated with its former mortgage business".) The words that are most needed before moving on to the merits of a case

4

are that GMAC Mortgage, LLC has claimed that it suffered an Injury in Fact and that concrete and substantive proof of the injury followed the claim. But, it did not. GMAC Mortgage, LLC has not claimed to be the Holder in Due Course and it has never claimed to have suffered any Injury in Fact. *GMAC Mortgage, LLC through its attorney Frank Lipsman and the Rescap Liquidation Trust through its attorney Joseph Shifer cannot and have not shown "concrete and substantive evidence" that GMAC Mortgage, LLC was ever involved in a contract for purchase of any alleged Promissory Note which included an 1. Offer (from GMAC Mortgage, LLC) 2. Acceptance (From Lend Tech Mortgage Funding, LLC) and 3. The Agreed upon Consideration (paid from GMAC Mortgage Corporation (PA) or GMAC Mortgage, LLC) paid by a purchaser to the alleged Seller Lend Tech Mortgage Funding, LLC which are the requirements of a contract. As far as any assignment of a Deed of Trust, which has no value, or indorsements on the alleged original Promissory Note, Yvette Ward who claimed she had Power of Attorney when she indorsed the alleged Promissory Note from Lend Tech Mortgage Funding, LLC to SGB Corporation to WestAmerica Mortgage Company, a registered fictitious name. There was no such Power of Attorney every written for Yvette Ward recorded or unrecorded.*

**(See Exhibit B- Dino Agnos Affidavit)**

7.) That never does judge Phillips state that the Frank Lipsman updates named Tim Beebe and the property at 4101 NE Hampstead, Lees Summit MO, and that Mr. Beebe and the subject property had been claimed as assets or "creditors" in regards to GMAC Mortgage, LLC's bizarre and fantastic bankruptcy artifice. Plaintiffs have never received any notice of any kind from Judge Martin Glen's Federal Court. Plaintiffs have never been offered or accepted The ResCap Resolution Trust as their agent, attorneys, or any other capacity in this bankruptcy. The alleged GMAC Mortgage, LLC foreclosure on this property was void ab initio and the alleged Successor Trustee's Deed created by the debt collection agency South and Associates is void ab initio. GMAC Mortgage, LLC was never anything but a Stranger to the deal which collected payments that it was not owed for seven years in violation of the FDCPA. If the void paperwork GMAC Mortgage, LLC has been claimed as an asset in the Rescap/GMAC bankruptcy it was done so as a fraudulent act in violation of Federal Bankruptcy Fraud laws and is a violation of the Fair Debt Collections Practices Act, which is not barred by the Bankruptcy Law invocations. **(See Exhibit G: Frank Lipsman statements)**

7 A.) The 2nd Circuit Appeals Court joined in with decisions by the 4th and the 7th In ***Garfield v. Ocwen Loan Servicing, LLC, 15-527 (2d Cir. Jan. 4, 2016),*** the Second Circuit Court of Appeals examined whether a debtor who has been discharged in a bankruptcy can sue in a district court under the Fair Debt Collection Practices Act ("FDCPA"), as opposed to seeking relief in the bankruptcy court. (See Exhibit Garfield v Ocwen Loan Servicing, LLC. Garfield filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Western District of New York. During the bankruptcy proceedings, Ocwen acquired Garfield's mortgage loan. Ocwen Loan Servicing, LLC has contacted Tim Beebe claiming to own the home loan. Plaintiff contends Ocwen Loan Servicing, LLC is working with GMAC Mortgage, LLC and others to foreclose on

Borrowers using the servicing lists of the 51 Debtors purchased in Judge Martin's court. Ocwen Loan Servicing, LLC will find it is easy pickings to go around using motions to lift stays in Bankruptcy courts using no evidence at all to convince an ill informed and sloppy BK judge who believes simply that the "Borrower is Wrong". This court has seen the status of the bankruptcy court from contradiction king Frank Lipsman as he and others work together as an enterprise to set up the same scenario as in *Garfield.*

*(See Exhibit C- Donna GARFIELD, Plaintiff–Appellant, v. OCWEN LOAN SERVICING, LLC, Defendant–Appellee, US 2nd Cir. Ct App Court No. 15-527, Decided: Jan 4th, 2016)*

## GARFIELD BACKGROUND:

*During her bankruptcy, the debtor paid the arrears on her mortgage, and agreed to make monthly payments to forestall foreclosure. After receiving her discharge, the debtor ceased making payments. Within months her arrearage totaled over six thousand dollars. The lender contacted the debtor and demanded payment of over twenty thousand dollars, which reflected both her post discharge arrears and the discharged amounts. The lender also reported on the debtor's credit an arrearage of over twenty thousand dollars. The debtor sued the lender in federal district court under the FDCPA alleging various violations.*

*In the proceedings below, the district court dismissed the debtor's complaint, holding that the Bankruptcy Code provided the exclusive remedy for the debtor's claims and that to the extent a remedy existed under the FDCPA, it conflicted with the Bankruptcy Code and was therefore precluded.*

*On appeal, the Second Circuit elucidated the standard for resolving the perceived conflict between the two federal statutes as follows: "When it is claimed that a later enacted statute creates an irreconcilable conflict with an earlier statute, the question is whether the later statute, by implication, has repealed all or, more typically, part of the earlier statute." The Court observed that repeal by implication is disfavored, and "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable."*

*In refusing to find an express or implied intention to repeal portions of the FDCPA with the enactment of the Bankruptcy Code, the Court held, "the Bankruptcy Code does not broadly repeal the FDCPA for purposes of FDCPA claims based on conduct that would constitute alleged violations of the discharge injunction. No irreconcilable conflict exists between the post-discharge remedies of the Bankruptcy Code and the FDCPA."*

*The Court found this to be particularly true in the post-bankruptcy discharge context because the debtor "no longer has the protection of the bankruptcy court." Specifically, the Court held Bankruptcy Code provision governing the discharge injunction, "does not*

6

*explicitly create a cause of action for its violation, whereas the automatic stay provision provides such a remedy, see id. § 362(k)." Thus, the Court held that the conflict was not only plain enough to require recognition of an implied intent to appeal, but would also deprive the debtor of a remedy under the FDCPA where the Bankruptcy Code provided no corresponding remedy.*

*With its opinion in **Garfield,** the **Second Circuit** joins the **Seventh (Randolph v. IMBS, Inc.,** 368 F.3d 726, 728 (7th Cir. 2004)) and the **Third Circuit (Simon v. FIA Card Services, N.A.,** 732 F.3d 259, 274 (3d Cir. 2013)) in holding that the FDCPA and Bankruptcy Code, although overlapping in certain respects, do not conflict to cause any kind of express or implied repeal of a debtors right to proceed under the FDCPA.*

7(B.) That in (***Everhome Mortgage Company v Sara Rowland*** *in the Court of Appeals of Ohio Tenth App. Dist. March 20, 2008)* the court stated:

*"Every action shall be prosecuted in the name of the real party in interest." **Civ.R.17(A)**. "A real party in interest is one who is directly benefited or injured by the outcome of the case. **Sheal v. Campbell** (1985), 20 Ohio St.3d 23, 24. The purpose behind the real-and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party in interest on the same matter.'" **Id.** at 24-25, quoting **In re Highland Holiday Subdivision** (1971), 27 Ohio App.2d 237, 240.*

In foreclosure actions, the real party in interest is the current holder of the note and mortgage. ***Chase Manhattan Mtge. Corp. v. Smith Hamilton*** *App. No. C-061069, 2007-0hio-5874, at paragraph 18;* (***Kramer v. Millot*** *(Sept. 23, 1994), Erie App. No. E-94-5* (because the plaintiff did not prove that she was the holder of the note and mortgage, she did not establish herself as a real party in interest). A party who fails to establish itself as the current holder is not entitled to judgment as a matter of law. ***First Union Natl Bank v. Hufford*** *(2001), 146 Ohio App.3d 673, 677, 679-80. Thus, in **Hufford,** the Third District No. 07 AP-615.*

*"Court of Appeals reversed a grant of summary judgment where a purported mortgagee failed to produce sufficient evidence explaining or demonstrating its right to the note and mortgage at issue. In that case, the record contained only "inferences and bald assertions" and no "clear statement or documentation" providing that the original holder of the note and mortgage transferred interest to the appellee. **Id.** at 678. The failure to prove who was the real party in interest created a genuine issue of material fact that precluded summary judgment. **Id.** at 679-680".*

When courts and attorneys do use the UCC in mortgage cases, which is rarely, they nearly always turn to UCC-3 which regulates "NEGOTIABLE INSTRUMENTS" and UCC-3 does apply. But, literally every home loan in America beginning on or around 1995 has an added collateral to secure the loan. There is always an attached security

instrument known as a Deed of Trust in states allowing a Non-Judicial foreclosure and as a Mortgage in Judicial foreclosure states. It is UCC-9 that controls the bulk of the regulation of "SECURED NEGOTIABLE INSTRUMENTS" which clearly eliminates the action of "assigning" the security instrument to perfect ownership of the loan.

*(See Exhibit A: multiple versions of forged copies of Notes with undated indorsements)(See Exhibit B: Recorded Documents Chain of Title)(See Exhibit D: Jeffrey Stephan sworn depositions)(See Exhibit Da.: 2008 Assignment of Deed of Trust signed by Jeffrey Stephan with a non-existent Power of Attorney from Lend Tech Mortgage Funding, LLC)(See Exhibit B: Dino Agnos affidavit)*

## UCC-3 as the statute regulating Negotiable Instruments & UCC-9 as the Statute regulating SECURED Negotiable Instruments the distinctions are clarified by the revised UCC-9:

## REVISED UCC Article 9

Revised Article 9 expressly includes the sale of promissory notes within its scope. See **UCC sec. 9-103(a)(3)**. However, there are **UCC sec. 9-103(a)(3)** some limitations.

1. Sales of promissory notes as part of the business from which they arose;

2. Assignments of promissory notes for collection only; and

3. Assignments of promissory notes to an assignee in satisfaction of indebtedness

These exclusions typically do not effect securitization transactions.

**Sec. 109(b)** of Revised Article 9 provides (as did Former Article 9) that "[t]he application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply." However, Comment 7 to this section makes clear the views of the drafters that a recorded assignment of a mortgage has no bearing on whether a security interest in the mortgage is created or perfected and that any cases to the contrary are overruled. According to Comment 7, "an attempt to obtain or perfect a security interest in a secured obligation by complying with non-Article 9 law, as by an security interest in a lien, such as a mortgage on retail property, that is not also coupled with an equally effective security interest in the secured obligation."

To perfect an interest in the note, the buyer/lender should, if the interest is a:

a. "Loan secured by interest in promissory note": Perfect by possession or filing. See **UCC secs. 9-312(a) and 9-313(a)**. Since possession of the note is not always practical, in many instances filing of a <u>UCC-1</u> may be only way to perfect. A bona fide purchaser in possession will prime perfection by filing.

8

"True Sale" of an interest in a promissory note: Be aware that neither filing nor possession is necessary or effective to perfect the security interest. Perfection is automatic upon attachment if the "security interest" results from the sale of the promissory note. See **UCC sec. 9-309(4)**. Once perfected, the security interest takes priority over the interest of a subsequent lien creditor and the originator/debtor's bankruptcy trustee. See **UCC sec. 9-317(a)(2); 11 USC sec. 544(a)(1)**. In addition, to accommodate the practice of warehouse lending, Revised Article 9 provides that a secured party does not relinquish possession of the mortgage if a mortgage warehouse lender delivers the original note to prospective purchasers. It need only instruct the third party that it is to hold for the benefit of the secured party, and to re-deliver the collateral to the secured party. **See UCC sec. 9-313(h), cmt. 9**. Because perfection can be done without filing, and possession of the instrument is not determinative of ownership, and because **UCC sec. 9-203(g)** states that the mortgage follows the note, the original maker of the note and an escrow holder cannot rely on the public records to determine who owns the note and who can sign a reconveyance or release of the mortgage.

b. Revised Article 9 does not protect the original maker, nor provide advice on how to determine whom to pay. Revised Article 9 simply states that the "issues are determined by real-property law". The Comments to **UCC sec. 9-109 of Revised Article 9** also state that any attempt to obtain or perfect a security interest in a mortgage by complying with non-Article 9 applications also state that any attempt to obtain recording a collateral assignment of the beneficial interest) would be ineffective. Purchasers of financial stability of originators/sellers to determine who really owns the interest. **See UCC-9-308, cmt. 6**.

As noted above, an absolute assignment of a promissory note carries with it the securing mortgage without the requirement of physical delivery of either the note or mortgage. Attachment of a security interest in a promissory note (which automatically includes the attachment of a security interest in the securing mortgage) requires either a security agreement authenticated by the debtor or possession of the collateral by the secured party pursuant to an agreement. See UCC **secs. 9-309(4) and 9-203**. Under the "principal/incident" view of the note/mortgage relationship, **UCC secs. 9-203(g) and 9-308(e)** provide that attachment of a security interest in a promissory note is also attachment of a security interest in a securing mortgage, and the perfection of a security interest in a promissory note is also perfection of a security interest in a securing mortgage.

It should be noted that Revised Article 9 ostensibly makes it easier for a secured party with a security interest in a promissory note to foreclose a mortgage securing the note. After the debtor/mortgagee's default, the secured party may exercise the debtor/mortgagee's rights with respect to any property that secures the debtors/mortgagee's obligations. See **UCC sec. 9-607(a)(3)**.

**Sec. 9-607(b)** of Revised Article 9 provides a way for the secured party to document its interest in the mortgage in the land records without the debtor/mortgagee's involvement. Under this section, the secured party is authorized to file in the land records a copy of the security agreement and a sworn affidavit, which states that a default has occurred and that the secured party is entitle to foreclose non-judicially. However, some problems exist with respect to this procedure: (1) a conflict may arise with state laws that require an acknowledgement or other conditions to recording a document in the land records (which provisions are usually not found in a security agreement); (2) Neither revised Article 9 nor the Official Comments provide that a memorandum of the security instrument has any effect.

*If there have been further assignments of the note, these further assignments also would have to be documented. See* **UCC sec. 9-619** (explaining the transfer statement). As one commentator recently stated, "Title insurance companies presumably will develop underwriting guidelines for determining when a foreclosure by a secured party that has established its chain of title by filing its security agreement is enforceable"; (4) this procedure does not appear to be available in those states that do not permit non-judicial foreclosure proceedings. **See W. Rodney Clement and Baxter Dunaway, "Revised Article 9 and Real Property,"**

If there was intent to transfer a promissory note when an assignment of mortgage was executed, the plaintiff/lender should prevail. See **UCC sec. 3-110(a)** *("The* **person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument").**

A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument"). Section **3-109(a)** provides that a person not in possession of an instrument is nonetheless entitled to enforce it *if the instrument was destroyed, lost, or is in the wrongful possession of an unknown person.*

However, under **Sec. 3-309(b)** the person seeking enforcement, if not the holder of the note, must prove the terms of the instrument and the person's right to enforcement, and also must provide "adequate protection" (by "any reasonable means") to the debtor/borrower to prevent the debtor/borrower from paying the same debt twice. If there was no intent to transfer, and the assignee of the mortgage was simply a "servicer"/agent for the holder of the note (which is common in connection with securitized loan transactions), general agency law may still protect the lender. See also UCC **sec. 3-110(c)(2)(ii)** (providing that if an instrument is payable to a person described as agent or similar representative of a named or identified person, the instrument is payable to the represented person, the representative, or a successor of the representative").

In a recent decision by the South Carolina Court of Appeals, **Swindler v. Swindler, 2003 S.C. App. LEXIS 104 (July 7,2003)**, the court dealt with an issue involving the

interplay between Article 3 and Article 9. While acknowledging that the UCC excludes from its application the creation or transfer of an interest in or lien on real estate, the court held that Article 3 clearly applies to negotiable instruments and that the negotiability of a note is not altered by the execution of a related real estate mortgage. The court noted that Article 3 does not distinguish an unsecured note from a note secured by a real estate mortgage and that Article 9 does not exclude a note secured by a real estate mortgage from the application of Article 3. According to the court, "nothing in Article 9 provides a limitation on the applicability of Article 3 to notes secured by mortgages on real estate." Id. at *10. The court stated further that, "Article 9 controls over Article 3 only where some conflict between the applicable provisions of Article 3 and Article 9 exists. Here, no conflict exists because Article 9 does not address the underlying indebtedness of a security interest." Id. at *11.

To summarize, under the UCC, possession is <u>not</u> an indication of ownership of the note. Recording of collateral assignments is not required under Revised Article 9. Equitable arguments are available to prevent a borrower from benefitting from the industry's inability to keep track of its documents.

8.) Plaintiffs contend that "fraud" trumps every part of the courts casual condemnation of Plaintiffs' property and that this court failed to Sua Sponte establish the Standing of GMAC Mortgage, LLC from the original Complaint of the Plaintiffs and the Answer from the Defendants and therefore never had subject matter jurisdiction or the discretion to claim subject matter jurisdiction and to proceed to the merits of the case. This case has been doomed by the naïve bias of the court that the Borrower must be wrong and the mythical statement that the "Borrower will get a free house". This thought should have disappeared when the Foreclosing Party could not and did not claim and prove that it had an Injury in Fact. There were never two parties with standing before this court in this Instant Case.

9.) That GMAC Mortgage, LLC, mostly through its attorney Frank Lipsman, has said in documents filed into this court that it was a "servicer", "your lender", Servicer for US Bank N.A. as Trustee for the Bear, Stearns ARM Trust Mortgage Back Security-2004, the holder of the Note etc.. But GMAC Mortgage, LLC has never claimed ownership of the subject Promissory Note, nor has GMAC Mortgage, LLC claimed an injury traceable to the Plaintiffs or the alleged Promissory Note. The subject Beebe loan closed on June 11th, 2004. GMAC Mortgage, LLC did not exist until October 25th, 2006. GMAC Mortgage, LLC filed for registration of its creation with the state of Delaware on October 25th, 2006 and filed merger papers describing a merger between it and GMAC Mortgage Corporation (PA) with Delaware on October 25th, 2006. The creation papers and the Delaware Merger papers for GMAC Mortgage, LLC were filed with the Missouri Secretary of State's (hereinafter "SOS") office on October 25th, 2006. On that

same day, October 25, 2006 the Missouri SOS Office filed a determination that "GMAC Mortgage, LLC, the "surviving entity, does not have the authority to do business in Missouri". There have been no conflicting files or correcting files entered into the GMAC Mortgage, LLC file at the Missouri SOS office. GMAC Mortgage, LLC never, at any time, had authority to do business in Missouri.

*(SEE EXHIBIT A- Registration records of the MISSOURI SECRETARY OF STATE GMAC MORTGAGE, LLC, GMAC MORTGAGE CORPORATION, GMAC BANK HISTORY OF CORPORATE FILINGS)*

10.) That the issue of standing may be raised at any time.

*(Article III of the U.S. Constitution) (Lacey v. BAC Home Loans Servicing, LP, 480 B.R. 13 (2012), United States Bankruptcy Court, D. Massachusetts, Bankruptcy No. 10-19903-JNF, Adversary No. 12-1249) (Ibanez, 458 Mass. At 651, 941 N.E.2d 40) (Bailey v. Wells Fargo Bank, NA (In re Bailey), 468 B.R. 464 (Bankr. D.Mass. 2012)) (Ball v. Bank of New York, No. 4:12-CV-0144-NKL, 2012 WL 6645695, at \*2 (W.D. Mo. Dec. 20, 2012) (Williams v. Kimes, 996 S.W.2d 43 (Mo. 1999))*

11.) That Standing is a jurisdictional issue antecedent to the right to relief. Missouri Courts and Federal Courts are well settled on the matter. There is no court discretion. If Standing has not been proved by the offending party, then the court has no jurisdiction to hear the merits of the case.

12.) That Article III Standing is a requirement in **all state and federal** courts in **the United States**. This requirement gives a party the "right to make a legal claim or seek judicial enforcement of a duty or right. Standing requirements for the federal courts are uniform and based upon constitutional requirements. For a lender to foreclose on a debtor's property, the lender must meet certain substantive constitutional requirements established by the doctrine of standing and prudential limitations required by rules of civil procedure. Courts have stated that "[T]he concept of standing subsumes a blend of constitutional requirements and prudential considerations." Importantly, courts have recognized that failure to satisfy all standing requirements may be dispositive in cases involving foreclosures.

13.) That the law of standing has its roots in Article III's case and controversy requirement. The U.S. Supreme Court has established a three-part test for standing. The "irreducible constitutional minimum of standing" requires the plaintiff to establish:

*First ... an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical."*

*Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."*

*Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."/2/*

14.) Because standing is a "threshold question," courts have stated that "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, sua sponte, whenever it becomes apparent. Had the state courts or this Federal court correctly looked into GMAC Mortgages, LLC's Answer in this in this instant case, then Standing would have been settled before going on to the merits of the case in 2011 as was required. The fact is that Foreclosing Party GMAC Mortgage, LLC did not have Standing at the time of the heinous foreclosure and accordingly no court could have had jurisdiction based on a genuine dispute. Standing is a threshold question based on the "case or controversy" requirement of Article III and cannot be waived. Without standing, a party is not properly before the court to advance a cause of action.

*("That in **United States v. AVX Corp., 962 F.2d 108, 116 n.7 (1st Cir. 1992)** (emphasis added); see also **Pershing Park Villas Homeowners Assn' n v United Pac. Ins Co., 219 F.3d 895, 899-900 (9th Cir. 2000)** (noting that standing is a threshold question based on the "case or controversy' requirement of Article III" of the Constitution and cannot be waived.).*

*See **Farm Bureau Ins. ;Co. of Ark. V Running M Farms, Inc.** 237 S.W.3d 32, 36 (Ark. 2006) (" It is fundamental in American jurisprudence that in order to bring a lawsuit against an opposing party, one must have standing to do so. Without standing, a party is not properly before the court to advance a cause of action") see also **Robert T. Mowrey et aql., Issues Arising in Connection with the Foreclosure or Other Enforcement of the Securitized Loan, in MORTGAGE AND ASSET BACKED SECURITIES LITIGATION HANDBOOK,** supra note 45, § 5:99, § 5:110 (providing a general overview of standing relating to securitization litigation).*

15.) That *"without evidence demonstrating the circumstances under which it received an interest in the note and mortgage, a Foreclosing Party cannot establish itself as the holder."*

*(**Everhome Mortg. Co. v. Rowland 10th Dist. No. 07AP-615, 2008-Ohio-1282, at ¶15**)*

*RECAP: Civ. R. 17(A)- Real Party In Interest*

*EVERHOME MORTGAGE COMPANY V SARA ROWLAND*

*IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT*

*MARCH 20, 2008*

*"Every action shall be prosecuted in the name of the real party in interest." Civ.R.17(A). "A real party in interest is one who is directly benefited or injured by the outcome of the case.* **Sheal v. Campbell** *(1985), 20 Ohio St.3d 23, 24. The purpose behind the real-and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party in interest on the same matter.'" **Id. at 24-25,** quoting **In re Highland Holiday Subdivision** (1971), 27 Ohio App.2d 237, 240.*

*In foreclosure actions, the real party in interest is the current holder of the note and mortgage.* **Chase Manhattan Mtge. Corp. v. Smith Hamilton** *App. No. C-061069, 2007-0hio-5874, at paragraph 18; (**Kramer v. Millot** (Sept. 23, 1994), Erie App. No. E-94-5 (because the plaintiff did not prove that she was the holder of the note and mortgage, she did not establish herself as a real party in interest). A party who fails to establish itself as the current holder is not entitled to judgment as a matter of law.* **First Union Natl Bank v. Hufford** *(2001), 146 Ohio App.3d 673, 677, 679-80.*

*Thus, in* **Hufford,** *the Third District No. 07 AP-615 Court of Appeals reversed a grant of summary judgment where a purported mortgagee failed to produce sufficient evidence explaining or demonstrating its right to the note and mortgage at issue. In that case, the record contained only "inferences and bald assertions" and no "clear statement or documentation" providing that the original holder of the note and mortgage transferred interest to the appellee.* **Id. at 678.** *The failure to prove who was the real party in interest created a genuine issue of material fact that precluded summary judgment.* **Id. at 679-680.**

*Similarly, in* **Washington Mut. Bank, FA v. Green** *(2004), 156 Ohio App.3d 461, the* **Seventh District Court of Appeals** *reversed the trial court's finding of summary judgment where the plaintiff failed to prove that it was the holder of the note and mortgage. There the defendant executed a note and mortgage in favor of Check In Go Mortgage Services, not Washington Mutual Bank, FA. Although Washington Mutual Bank, FA submitted an affidavit alleging an interest in the note and mortgage,* **it did not state how or when it acquired that interest. Id. at 467.** *The court concluded that this lack of evidence defeated the purpose of* **Civ.R. 17(A)** *by exposing the defendant to danger that* <u>*multiple "holders" would seek foreclosure based upon the same note and mortgage. Id.*</u>

*In the case at bar, the note and mortgage identify TrustCorp-not Everhome-as the lender. Therefore, Everhome needed to present the trial court with other evidence to prove its status as the current holder of the note and mortgage. To accomplish this, Everhome relied upon the affidavit testimony of Becky North, an Everhome officer.*

*In her affidavit, North stated that "the copies of the Promissory Note and Mortgage Deed attached to Plaintiff's Complaint are **true and accurate copies** of the original instruments held by Plaintiff." (Emphasis added). Beyond this tangential reference, North's affidavit contains no further averments regarding Everhome's interest in the note and mortgage".*

16.) That the Plaintiffs state that they have pled their injuries from the beginning and still contend they are the rightful owners of the Property and that any collection of money from the Plaintiffs by the Defendant GMAC Mortgage, LLC and South and Associates was unlawful and the Plaintiffs are the ones who have been injured in fact because they were deceived into paying more than $299,000 to GMAC Mortgage, LLC and it's collections agent South and Associates which are both violations of the FDCPA and the Missouri Merchandising Practice Act which has been taken from Plaintiffs in a decision by this court when it had no jurisdiction. GMAC Mortgage LLC and its henchmen did collect with no more proof than little coupons in the mail. Plaintiffs are now threatened with the Wrongful loss of the home due to a state court and a Federal Court making decisions with no jurisdiction. Plaintiffs injuries can be fairly traced to GMAC Mortgage, LLC for wrongfully collecting money, (or theft), recording false lien claims in the County Recorder's office and to the wrongful foreclosure action held in this instant case by South and Associates the hired gun debt collection agent and also appointed foreclosure Successor Trustee which is in itself a violation of the FDCPA.

17.) That a ruling that no Defendant has voluntarily proven Standing, nor has been ordered by the court to do so, leaving this court without subject matter jurisdiction, proving the wrongful foreclosure was void ab initio, at its onset, and must be dismissed. This will redress Plaintiffs' injuries.

18.) That the Plaintiffs are now, have been for six years, are properly pleading that they were not in default on any Promissory Notes to any entity mentioned herein and specifically GMAC Mortgage, LLC. GMAC Mortgage, LLC never negotiated and transacted a purchase of any alleged Plaintiff Promissory Note and therefore did not have any right or reason to send little coupons demanding collections from Plaintiffs.

**Quote from Holden:**

**Civil Rule 17{A}** provides that "[e]very action shall be prosecuted in the name of the real party in interest."

{{[A] party lacks standing to invoke the jurisdiction of the court unless he has * * * some real interest in the subject matter of the action." (Emphasis deleted.) *Fed. Home Loan Mtge.,Corp. v. Schartzwald*, *134 Ohio St.3d 13, 2012-0hio-5017, Paragraph 22*, quoting *State ex reI. Dallman v. Franklin Cty. Court of Common Pleas*, *35 Ohio St.2d 176, 179 {1973}*. "The real party in interest in a foreclosure action "is the current holder of the note and mortgage." *Quantum Servicing Corp. v. Haugabrook*, *9th Dist. Summit No. 26542, 2013-0hio-3516, Paragraph 8*, quoting *Wells Fargo Bank N.A. v. Horn*, *9th Dist. Lorain No. 12CA010230, 2013-0hio-2374, Paragraph 10*. Whether the plaintiff has standing to bring the action is a **jurisdictional matter** that is **determined at the time of the filing of the complaint**. *Schwartzwald at Paragraph 25*.

*In support of its motion for summary judgment, Deutsche Bank attached an affidavit from Megan L. Theodora, an assistant secretary for JPMorgan Chase Bank, National Association ("Chase"). She averred that Chase serviced the Holden's loan on behalf of Deutsche Bank. Ms. Theodora testified that Deutsche Bank purchased the note from NovaStar on November 1, 2005 and stored it at its Monroe, Louisiana facility until it was forwarded to Deutsche Bank's attorney in connection with the filing of the foreclosure complaint. Ms. Theodora further testified that, when Chase received the note, it was endorsed in blank. Attached to her affidavit was what she stated was a copy of the "original Note," which contained an undated blank indorsement from NovaStar.*

*Thus, Deutsche Bank has filed two different copies of the same note, one with and one without an indorsement. Both copies purport to be true and accurate copies of the original note. Ms. Theodoro's affidavit fails to explain why the copy of the note attached to her affidavit differs from the one attached to the complaint when, from her averments, the note, while in Chase's possession, had always contained a blank indorsement from NovaStar to Deutsche Bank.*

**(In RE: MERS; United States Appeals Court Ninth Circuit)**(See Fed. R. CIV. P. **12(h)(3)**: *"If the court determines at any time that it lacks subject matter jurisdiction over the foreclosure, the court must dismiss the action"* *(of foreclosure)*.

*See also: In U.S. Dist. Ct. E.D. of PA.,* **INTERNET PIPELINE, INC.** *v.* **APLIFI, INC.** *: NO. 10-6089 MEMORANDUM;* **Rule 12(h)(3)** *of the Federal Rules of Civil Procedure provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."*

**Plaintiffs' Rights to Challenge Standing**

Missouri Case Law concerning challenging Standing and therefore Subject Matter Jurisdiction of the court does not differ from any other state.

15.) That if "agreed upon" Consideration at the closing for the purchase of the subject property has not been proven to have come from GMAC Mortgage, LLC, (It is Lend Tech Mortgage Funding, LLC named on the Promissory Note and the Deed of trust as Lender) then legally it did not come from GMAC Mortgage, LLC. Without a money trail claimed and proved to have been funded by GMAC Mortgage, LLC to purchase the *Promissory Note* from the originator Lend Tech Mortgage Funding, LLC and that GMAC Mortgage, LLC had taken delivery of the alleged original Promissory Note, then the Plaintiffs have a right to challenge where the funding came from.

16.) That there is no purchase and sale contract. There are no copies of wires or cashier's checks. There is no Proof of Delivery to GMAC Mortgage, LLC of the original, unaltered, and safely kept alleged Promissory Note. GMAC Mortgage, LLC's proof of ownership and Standing is a claim based on a Servicing List and little coupons sent in the mail to the alleged borrower claiming that money should be sent to "GMAC MORTGAGE". That moniker has been used on all stationary used by all of the GMAC companies

17.) That Plaintiffs are anguished that 8 million American families have been reduced to refugees by this exact same scheme played out over and over again. If the courts are not going to protect American citizens from infringement of the Due Process Clause and the cases and controversies requirements of our constitution, then they need to explain to the citizens just how to protect themselves from any stranger on the street from scrounging up falsified Promissory Notes and paying $8.00 for a county certified recording of a Deed of Trust from pulling off seemingly the impossible scam of stealing homes with no actual valid proof that they are not a Stranger to the Deal.

18.) That just because the attorney culture fears the repurcussions from taking advantage of constitutional remedies for exactly this situation, which the framers of the constitution prophesized would happen, no one should assume that the informed Pro Se has any fear of using any legal mechanism to save his home from illegal racketeering elements, or to help others so situated to save their home.

**Example and Excerpt from the case citation generally accepted as Missouri law on the matters at issue here :**

United States Court of Appeals FOR THE EIGHTH CIRCUIT, No. 08-1681, **Jacqueline Gray; Windhover, Inc., Plaintiffs-Appellants, v. City of Valley Park, Missouri, Defendant-Appellee. ,**

On Appeal from the United States District Court for the Eastern District of Missouri.

Amici on behalf of Appellee. *

Submitted: December 10, 2008

Filed: June 5, 2009 (Corrected: 06/11/2009)

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

BEAM, Circuit

## Subject Matter Jurisdiction

*We recognize that "[a]ny party or the court may, at any time, raise the issue of*

*subject matter jurisdiction."*

(***GMAC Commercial Finance LLC v. Dillard Dep't Stores, Inc.,*** *357 F.3d 827, 828*
*(8th Cir. 2004)).*

*"And, even if neither party had raised the issue below,* <u>we</u> *are* <u>required</u> *to address it."*

(***Renne v. Geary,*** *501 U.S. 312 (1991)) (discussing justiciability and ripeness for the*
*first time before the Supreme Court);* ***FW/PBS, Inc. v. City of Dallas,*** *493 U.S. 215,*
*230-31 (1990).*

*"Federal courts are not courts of general jurisdiction; they have only the power*

*that is authorized by Article III of the Constitution and the statutes enacted by*

*Congress pursuant thereto."*

(***Bender v. Williamsport Area Sch. Dist.,*** *475 U.S. 534,541 (1986).)*

*"The limitations imposed by Article III are usually referred to as the 'case or controversy'*
*requirement."* ***Schanou v. Lancaster County Sch. Dist. No. 160,*** *62 F.3d 1040, 1042*
*(8th Cir. 1995)* ***(quoting Arkansas AFL–CIO v. FCC,*** *11 F.3d 1430,1435 (8th Cir.*
*1993) (en banc));* ***see also Valley Forge Christian College v. Americans United for***
***Separation of Church & State, Inc.,*** *454 U.S. 464, 471 (1982)* ***("Article III of the***
***Constitution limits the 'judicial power' of the United States to the resolution of***
***'cases' and 'controversies.'").***

*This court defines "case or controversy" to require "a definite and concrete controversy*
*involving adverse legal interests."*

(***McFarlin v. Newport Special Sch. Dist.,*** *980 F.2d 1208, 1210 (8th Cir.1992).*

*"Federal courts must always satisfy themselves that this requirement has been*

18

*met before reaching the merits of a case. Courts employ a number of doctrines to determine justiciability such as standing, ripeness, and mootness."*
**Schanou,** *62 F.3d at 1042.*

*Article III standing represents "perhaps the most important" of all jurisdictional requirements.* **FW/PBS, 493 U.S. at 231.** *This doctrine "requires federal courts to satisfy themselves that the plaintiff (in this case due to the nature of non-judicial foreclosure the Plaintiffs as alleged borrowers are analogous to defendants which are contesting the foreclosing parties standing to <u>collect money</u>, <u>declare default</u>, has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction."*

**Summers v. Earth Island Inst.,** *129 S. Ct. 1142, 1149 (2009) (internal quotations and emphasis omitted).*

*In the normal course, the foreclosing party has the responsibility clearly to allege facts demonstrating that she is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.*

**Warth v. Seldin,** *422 U.S 490, 518 (1975).*

*This assures the existence of that measure of concrete adverseness necessary to sharpen the presentation of issues necessary for the proper resolution of the constitutional questions.*

**City of Los Angeles v. Lyons,** *461 U.S. 95, 101 (1983).*

*It is customary that "the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor" when making a determination on standing.*

*To satisfy Article III's standing requirement, (1) there must be "injury in fact" or the threat of "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to defendant's challenged action; and (3) it must be likely (as opposed to merely speculative) that a favorable judicial decision will prevent or redress the injury.*

*Summers, 129 S. Ct. at 1149; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*
*(TOC), Inc., 528 U.S. 167, 180-81 (2000).*


*The standing "requirement assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'"*

**Summers, 129 S. Ct. at 1149 (quoting Schlesigner**

**v. Reservists Comm. to Stop the War, 418 U.S. 208, 221 (1974))."**


*In **Stoesel v. American Home**, 362 Set. 350, and 199 N.E. 798 (1935), the court ruled and determined that, **"Under Illinois Law and Federal Law**, when any officer of the Court has committed "fraud on the Court", the order and judgment of that court are void and of no legal force and effect." **In Sparks v. Duval County Ranch**, 604 F.2d 976 (1979), the court ruled and determined that, "No immunity exists for co-conspirators of judge. There is no derivative immunity for extra-judicial actions of fraud, deceit and collusion." In **Edwards v. Wiley**, 374 P .2d 284, the court ruled and determined that, "Judicial officers are not liable for erroneous exercise of judicial powers vested in them, but they are not immune from liability when they act wholly in excess of jurisdiction." See also, **Vickery v. Dunnivan**, 279 P.2d 853, (1955). In **Beall v. Reidy**, 457 P.2d 376, the court ruled and determined, "Except by consent of all parties a judge is disqualified to sit in trial of a case if he comes within any of the grounds of disqualification named in the Constitution". In **Taylor v. O'Grady**, 888 F.2d 1189, 7th Cir. (1989), the circuit ruled, "Further, the judge has a legal duty to disqualify, even if there is no motion asking for his disqualification." Also, when a lower court has no jurisdiction to enter judgment, the question of jurisdiction may be raised for the first time on appeal. See **DeBaca v. Wilcox**, 68 P. 922.*


*That the right to a tribunal free from bias and prejudice is based on the Due Process Clause. Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his/her property, **then the judge has engaged in the crimes of interference with interstate commerce** and depriving a U.S. Citizen of constitutional rights; the judge has acted in his/her personal capacity and not in the judge's judicial capacity.*

**(See U.S. v. Scinto, 521F.2d 842 at page 845, 7th circuit 1996)**


19.)   That the Substituted Trustee, debt collecter South and Associates, PC (now dodging public outcry with the name change to Southlaw) is one of only six professional "Successor Trustees" left each month in Missouri when over 200 named Trustees on the

Deed of Trust are substituted out of the Deed of Trust by appointment. South attorneys acted as a debt collector on the subject alleged home loan which is the subject of this instant case. is the proof of the credit bid used as real money by GMAC Mortgage, LLC and while on the subject of credit bid and the following Trustee's Deed there has been no Missouri statute required reconciliation of the disbursements of the proceeds from the fraudulent foreclosure sale. Did the Borrowers owe a deficiency, or were they deprived of their legally required surplus? This court has not seen such a "proof of disbursements of sales proceeds from the Substituted Trustee. Plaintiffs have diligently researched this common accounting and found none since 1994. But, Plaintiffs have found evidence of thousands over the previous 300 years. Who did the Trustee pay and why? Did GMAC Mortgage, LLC use the Promissory Note copies that are filed by Defendants in this case as the credit bid? If so, on the four versions of copies of what are all represented as the original Promissory Note, there are multiple undated indorsements (UCC spelling), but none are to GMAC Mortgage, LLC. These are all legitimate issues of genuine dispute, yet no answers have been uttered by counsel. But, of course, they must answer or leave the field. The court cannot have found that GMAC Mortgage, LLC proved it possessed and owned the alleged Promissory Note and how it gained ownership, because GMAC Mortgage, LLC has not done so. The court cannot have found that GMAC Mortgage, LLC claimed that it had suffered and Injury in Fact which it could prove both concretely and substantively because GMAC Mortgage, LLC has not done so. GMAC Mortgage, LLC has not proven that it legally owned the alleged Promissory Note in its own name before collecting money, declaring default, or beginning foreclosure. GMAC Mortgage, LLC was never indorsed the Promissory Note and the "phantom merger" in the successor by merger claim cannot be upheld in a short search of the records of the Secretary of State of Missouri. If the Plaintiffs paid over $200,000 including $45,000 in cashier's checks to South and Associates in that name and at the bullet proof window in the South and Associates office how can it be possible that Plaintiffs were not due a surplus? Well it is not possible. Where is the Replacement Trustee's accounting as required by Missouri statute? It does not exist because the Replacement Trustee South and Associates never created one.

*(See Exhibit E- Copies of Cashier's Checks made out to South and Associates the debt collector attorney and biased Successor Trustee for more than $30,000)*


20.) That pursuant to Title 28, USC 1331: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

(June 25, 1948, ch. 646, 62 Stat. 930; Pub. L. 85–554, § 1, July 25, 1958, 72 Stat. 415; Pub. L. 94–574, § 2, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 96–486, § 2(a), Dec. 1, 1980, 94 Stat. 2369.)

21.) That Plaintiffs are not complaining about the sales price. They are complaining that they do not know what the price was and what was done with the proceeds and contend that enterprise partners GMAC Mortgage, LLC and South and Ass. have violated the FDPCA and Bankruptcy Fraud statutes and have obstructed the availability of information to the Plaintiffs. Plaintiffs cannot find out even through discovery what should have been disclosed immediately, because discovery has been held up by shielding the entire artifice by veiling the scheme through federal bankruptcy fraud.

*["There must be something more than mere inadequacy of price – some fraud or unfair dealing; some deceit practiced upon the mortgagor, or some unfair advantage taken in respect of the transaction"].*

**(Betzler v. James, 126 S.W. 1007, 1011-12 (Mo. 1910)**


## 22. That it is not only Borrowers who are obliged to have an accounting of the disbursements of the proceeds of the foreclosure sale.

**The IRS** is to be noticed of Non-Judicial Foreclosure and to be presented with a reconciliation of the credit bid and the disbursements of sale proceeds and the reporting of any surplus. This did not happen. Plaintiffs have still not seen the accounting of the sale. Plaintiffs made a down payment at closing of more than $100,000 at closing and paid payments for seven years. It is impossible that there was no surplus, which by state statute would have gone to the alleged Borrower. Are Plaintiffs going to be sued for a deficiency? If so, on what records will we rely? There are no records. Well the foreclosing party was to notice IRS in the event of an imminent Non-Judicial Foreclosure. This is something the court could ask for to determine just how valid the foreclosure was.



Part 5. Collecting Process

Chapter 12. Federal Tax Liens

Section 4. Judicial/Non-judicial Foreclosures

**5.12.4 Judicial/Non-judicial Foreclosures**

- 5.12.4.1   Foreclosure Overview

- 5.12.4.2  Judicial Foreclosures
- 5.12.4.3  Non-judicial Foreclosures
- 5.12.4.4  Notice of Non-judicial Sale
- 5.12.4.5  Non-Judicial Sale of Perishable Goods
- 5.12.4.6  Consent to Sale of Property Free of Lien
- 5.12.4.7  Non-judicial Sale Activities and Tasks
- 5.12.4.8  Redemption
- Exhibit 5.12.4-1  Letter 1840 (DO)

**5.12.4.1**                                                          **(06-11-2010)**
**Foreclosure Overview**

1. A foreclosure is the process by which an owner's right to a property is terminated, the foreclosing party's interest is liquidated, and junior creditor interests on the property are extinguished. This IRM contains instructions and information related to third party foreclosures. It does not address the Service's suits to foreclosure lien interests.

2. There are two types of foreclosures discussed in this IRM. Judicial foreclosures as referenced in 28 USC § 2410 and 26 USC § 7425(a) and non-judicial foreclosures as referenced in 26 USC § 7425(b). State law governs whether the foreclosure is judicial or non-judicial. The location of the property being foreclosed will determine which state's laws are followed.

3. Judicial foreclosures are processed either in federal or state courts and are the primary responsibility of the Department of Justice (DOJ). When DOJ requires assistance or information, the request is handled through Advisory. Non-judicial foreclosures are the primary responsibility of Advisory. When Advisory requires assistance they issue an OI to the Field. Field Revenue Officers may also find that property belonging to an assigned taxpayer is in foreclosure.

4. Non-judicial foreclosures are possible when a power of sale clause exists in a mortgage or deed of trust. A "power of sale" clause is where the borrower pre-authorizes the sale of property to pay off the balance on a loan in the event the borrower defaults.

5. There are four classes of participants to keep in mind when working foreclosures. They are:

   - Foreclosing party or the lender

   - Foreclosed party or the borrower

- Creditors
- Foreclosure sale purchaser

Each has differing responsibilities or needs during the process. The Service has an education responsibility, when working foreclosures, to ensure the participating parties have knowledge of the applicable Federal statutes pertaining to their part of the foreclosure process.

6. In general:

A.     The foreclosing party has the responsibility to provide notice of the foreclosure suit commencement or sale, conduct the foreclosure sale, and distribute surplus or excess proceeds resulting from the foreclosure sale.

B.     The foreclosed party may have tax consequences arising from the process. A portion of their debt may be forgiven which translates to taxable income. See Mortgage Debt Relief Act of 2007 and IRM 5.12.4.1.3(5).

C.     Creditors such as the IRS need to determine whether they were properly noticed, how the foreclosure impacts their interest in the property, whether there are surplus or excess proceeds they may be entitled to, and whether redemption from the foreclosure sale purchaser is a consideration.

D.     The foreclosure sale purchaser's acquisition of the property may be temporary if redemption is a consideration.

7. The percentage of real estate foreclosures rise in bad economic times because they are tied to:

- Real estate values
- Loan to value rates
- Borrower's ability to pay the loan

Real estate loans become high risk investments for lenders when the first two items below are compounded by the third item:

- Loan amount encumbers 100% or more of the value of the property
- Loan collateral is only the property encumbered by the loan
- Loan payment more than 40% of borrower's monthly net income

If the value of real estate drops it inhibits the lender from renegotiating these types of loans. Then it takes only a shift in the borrower's income or cost of living to cause a loan to default.

**5.12.4.1.1**                                                                                    **(06-11-2010)**
**Investigation Guidelines for Judicial/Non-judicial Sales**

1. The purpose of a judicial or non-judicial investigation it to determine first whether the foreclosing party holds an encumbrance senior or junior to the IRS position. If the foreclosing encumbrance is junior to the IRS position the IRS lien remains on the property undisturbed by the foreclosure. If the foreclosing encumbrance is senior, the employee investigates how the Service's equity in the property is impacted by the foreclosure and whether any action is warranted to protect that interest.

2. Other Investigations (OI) to investigate foreclosures originate in Advisory. For detailed information, see IRM 5.12.4.7(1).

3. During the course of a judicial or non-judicial investigation, when the applicant, taxpayer, representative, or IRS employee misses a specific deadline, follow-up is based on meeting the Service's requirements to maintain its standing in the proceeding and should be initiated **no later than** 14 calendar days after the missed deadline. This follow-up includes closing the case if this action is appropriate.

4. When circumstances dictate, the employee should use problem solving and negotiation techniques, and in so doing consider the taxpayer's/POA/third party's perspective when working toward case resolution.

5. Any written notification or other communication should address the issue(s) clearly and in a language understandable to someone unfamiliar with Service terms, acronyms, and jargon.

**5.12.4.1.2**          (06-11-2010)
**Lien Discharge Consideration During Foreclosure Investigation**

1. Foreclosing mortgagees should be encouraged to request discharges under IRC 6325(b)(2) before the sale rather than join the United States in a judicial proceeding. It would be to their advantage to eliminate the Government's right of redemption and to the Government's advantage to eliminate lengthy litigation. However, a Certificate of Discharge will not be issued during the pendency of litigation without the prior approval of Area Counsel.

2. A commitment letter will be furnished to foreclosing parties within thirty calendar days of receipt of a complete application. Certificates will be issued after receipt of proof that the taxpayer has been divested of right, title or interest in the property.

3. A commitment letter should not be issued to parties in the non-judicial foreclosure process when adequate notice of sale has been provided as required by IRC 7425 and outlined in Publication 786. In these circumstances the parties should be advised, if interested, of the procedures for requesting the government release its right of redemption. The instructions for application are in Publication 487.

4. If a Federal agency has foreclosed non-judicially and given adequate notice, they may feel that the lien remains a cloud upon the title. As an accommodation to that agency, a discharge will be issued.

**5.12.4.1.3**                                                                          **(06-11-2010)**
**Mortgage Forgiveness**

1. The subject of mortgage forgiveness may be encountered when working foreclosure cases. It is provided here as an awareness of a taxpayer's potential tax consequence arising from foreclosure.

2. When lenders foreclose and sell a borrower's property or restructure the borrower's loan, the lender may forgive or cancel portions of the loan. A lender may use this as an alternative to or in conjunction with a deficiency judgment against the borrower for the balance remaining on the loan after the foreclosure sale. The tax code treats the amount forgiven as income to be taxed. The following are typical scenarios where loan forgiveness may be encountered.

   - Lender modifies loan reducing the principal balance of loan and the borrower keeps house

   - Property is sold and deeded back to the lender

   - Lender forecloses and the property sells for less than the amount of the loan

3. Cancellation of debt may impact the Service's decision to discharge or subordinate a lien interest related to a foreclosure investigation. Asking the lender or borrower whether a portion of the debt will be cancelled should be added to the foreclosure investigation questions for those parties.

4. The amount forgiven is all or a portion of the remaining amount on the original loan minus the new loan or minus the sale amount of the property. This forgiven amount becomes cancellation of debt income (COD) to the taxpayer. COD income must be included as ordinary income on the taxpayer's return unless exclusion is allowable.

5. The Mortgage Forgiveness Debt Relief Act of 2007 increases incentives for borrowers and lenders to work together when the foreclosure involves the borrower's principal residence. The objective is to allow families to secure lower mortgage payments without facing higher taxes.

**Note:**

Any questions related to these considerations should be referred through appropriate channels, to the Milwaukee Area Counsel Attorneys who are the subject matter experts on this topic.

References on this topic which may be of assistance are:

- IRS FAQs – Mortgage Forgiveness Debt Relief Act found at http://www.irs.gov/individuals/article/0,,id=179414,00.html

- Form 982 & Instructions Reduction of Tax Attributes Due to Discharge of Indebtedness (And Section 1082 Basis Adjustment) found at http://www.irs.gov/pub/irs-pdf/f982.pdf

- Pub 4681 Canceled Debts, Foreclosures, Repossessions, and Abandonments (for Individuals) found at http://www.irs.gov/pub/irs-pdf/p4681.pdf

- Pub 544 Sales and Other Dispositions of Assets found at http://www.irs.gov/pub/irs-pdf/p544.pdf

## 5.12.4.2      (08-11-2006)
## Judicial Foreclosures

1. Section 2410 of Title 28 of the United States Code is the authority under which the United States consents to be sued in suits to quiet title, to foreclose a mortgage or other lien, to partition, to condemn, or interpleader suits, or suits in the nature of interpleader with respect to property on which the United States has or claims a mortgage or other lien.

2. If the foreclosure action involves an encumbrance which is junior to the NFTL, the sale of the property shall be made without disturbing the NFTL unless the United States agrees that the property be sold free and clear of its liens, in which event the proceeds are distributed according to the priorities of the interests of the various parties involved.

3. When a foreclosure action, to which the United States has been made a party, involves an encumbrance which is prior in right to the NFTL, a judicial sale has the same effect on the Government's lien as it would on any other junior lien under local law in the place where the property is situated, i.e., junior tax liens are extinguished on that particular property.

## 5.12.4.2.1      (06-11-2010)
## Judicial Foreclosure Case Responsibility

1. It is the responsibility of the Department of Justice (DOJ) to work 28 USC Section 2410 foreclosures. These are actions initiated by third parties where a NFTL has been recorded against the property and the process takes place in the judicial system. DOJ requests the assistance from Advisory as needed when working these cases but case priority is dependent on DOJ resources.

2. The type of assistance required by DOJ of the Service includes:

   A. Determination of the IRS lien priority

   B. Determination whether surplus or excess proceeds need addressing

27

C. Redemption investigation

D. Other information as requested

**Note:**

A Certificate of Discharge will not be issued during the pendency of litigation without the prior approval of Area Counsel.

**5.12.4.2.2**                                                    **(06-11-2010)**
**Judicial Foreclosure Activities and Tasks**

1. The U.S. Attorney will forward a copy of the summons and complaint, along with a request for the information needed to prepare an answer, to the area director, Attention: Manager, Advisory, when the United States or the area director is joined in a suit to foreclose a mortgage or other lien (Section 2410 (Title 28, USC)).

2. The request will be promptly screened against the Notice of Federal Tax Lien files to determine the balance due on the lien(s) which involved the United States in the proceedings. In cases where records indicate no outstanding liability, the area director will advise the U.S. Attorney, and the U.S. Attorney will file a disclaimer on behalf of the United States.

3. In all other cases, Advisory will:

   A. open a NF OI - 146 - Judicial Foreclosure on ICS no later than 7 calendar days after receipt,

   B. document the receipt date of the notice of judicial foreclosure,

   C. establish a file, and

   D. furnish any information requested by the U.S. Attorney that may be obtained without a formal investigation

The U.S. Attorney will take the legal action deemed appropriate.

4. Advisory will follow up with the U.S. Attorney or the clerk of the court until a date of sale is established, unless a redemption investigation is not required.

5. In many cases the property will be sold for an amount more than sufficient to satisfy the mortgage or other liens which are prior to those of the United States. In such cases action should be taken to obtain the surplus proceeds for application to the taxpayer's account.

6. Each area is responsible for establishing the time frame and methodology for following up. However, during the course of an investigation, when the applicant, taxpayer, representative, or IRS employee misses a specific deadline,

28

follow-up is based on meeting the Service's requirements to maintain its standing in the proceeding and should be initiated **no later than** 14 calendar days after the missed deadline. This follow-up includes closing the case if this action is appropriate. Established procedures should strive to provide a minimum of 90 days remaining available to conduct a redemption investigation.

7. The revenue officer assigned the investigation will provide to Advisory by the date specified on the Form 2209, Courtesy Investigation:

   - a completed Form 4376, Report of Investigation (IRC 7425 or 2410 USC), or

   - a memorandum in accordance with IRM 5.12.5.6.4; IRM 5.12.5.6.4

   - the original history documentation if not on ICS, and

   - any other information requested by the U.S. Attorney

**5.12.4.2.3**                                                   **(06-11-2010)**
**Right to Redeem Property Sold at Judicial Sale**

1. Redemptions and redemption investigations are covered in IRM 5.12.5.

2. 28 USC 2410(c) provides that where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have not less than 120 days from the date of sale within which to redeem. This provision gives the Service time to investigate and determine whether it would be to the advantage of the United States to redeem the property. Redemption allows the Service to resell the property for more than the cost of redemption with the resulting benefit to the Government. A principal consideration in such an investigation entails a determination as to whether the value of the property sold in the foreclosure proceeding is reasonably in excess of the amount required to effect the redemption.

3. Advisory generally will not work or issue a courtesy investigation, for the purpose of determining whether or not to exercise the right of redemption, more than 30 days prior to the scheduled date of sale. An effort should be made to issue the investigation no more than 30 days after the sale is completed, thus allowing the maximum amount of time to complete the redemption process.

4. In cases where it appears that redemption may be feasible, the assigned employee will retain:

   - the Form 2209,and

   - the original Form 4376.

5. The assigned employee will send a copy of the Form 4376, and any other information requested by the U.S. Attorney to the Advisory GM by the due date

of the Form 2209. See IRM 5.12.5 for procedures related to redemptions and redemption investigations.

### 5.12.4.3 (08-11-2006)
### Non-judicial Foreclosures

1. Non-judicial foreclosures are possible when the borrower has granted the lender, through the loan documents, the ability to foreclose outside of a court's jurisdiction. The process is determined by state statutes. When working non-judicial foreclosures Advisors and Revenue Officers need to be aware of the foreclosure statutes in the state where the property is located.

2. Property is discharged from the tax lien when the holder of a superior lien forecloses by non-judicial sale under IRC 7425(b)(2). Foreclosure by a lienholder junior to the NFTL does not disturb the tax lien (IRC 7425(b)(1).

### 5.12.4.3.1 (06-11-2010)
### Investigation Elements and Responsibilities for Non-Judicial Foreclosures

1. The elements of a non-judicial foreclosure investigation generally the responsibility of Advisory deal with whether the Service was properly notified:

    A. IRS lien priority determination

    B. Notice of Non-Judicial Sale adequacy determination (IRC 7425(c)(1))

    C. Consent to Sale review and determination (IRC 7425(c)(2))

    D. OI issuances to the Field for assistance

2. The elements of a non-judicial foreclosure investigation which can be the responsibility of either Advisory or the Field deal with foreclosure sale and post foreclosure sale activities:

    A. Foreclosure sale monitoring

    B. Surplus or excess foreclosure sale proceed availability determination and pursuit

    C. State law research relating to claiming surplus or excess foreclosure sale proceeds

    D. Status of CDP process research related to tax liabilities associated with claims for surplus or excess foreclosure sale proceeds

    E. Redemption investigation

### 5.12.4.4 (06-11-2010)
### Notice of Non-judicial Sale

1. Except for perishable goods, *IRM 5.12.4.5.*a notice of a sale will be given, in writing, by registered or certified mail or by personal service, not less than 25 days prior to the sale, to the Advisory group manager, in the Field Collection Area where the sale is to be held. (See IRC §7425(c)(1)).

2. Persons seeking information on when or how to submit a notice of non-judicial sale should be furnished a copy of Publication 786, Instructions for Preparing Notice of Non-judicial Sale of Property and Application for Consent to Sale and Publication 4235, Advisory Group Addresses.

3. In situations where a notice of Federal tax lien has not been filed or has been filed less than 31 days before the sale, it is not necessary to notify the Advisory group managers office of a sale of the taxpayer's property. In these situations, the sale shall have the same effect with respect to the discharge of the Federal tax lien/NFTL as provided by local law with respect to junior liens.

4. When the sale is postponed, the seller of the property is required to give notice of the postponement to the Advisory group managers office in the same manner required under local law with respect to other secured creditors.

5. Notice of sale is required to be given even though such notice was not originally required because no NFTL was filed less than 31 days before the scheduled date of sale, if the postponed sale date is more than 31 days from the lien filing date.

6. In cases of forfeiture of land sales contracts, Area Counsel should be consulted to determine if the Service has a redemption right.

### 5.12.4.4.1                                                                (06-11-2010)
### Determining the Date of Non-judicial Sale

1. The date of the sale shall be determined in accordance with the following rules:

    A. in the case of divestment of junior liens on property resulting directly from a public sale, the date of sale is deemed to be the date the public sale is held, regardless of the date under local law on which junior liens on the property are divested or the title to the property is transferred,

    B. in the case of divestment of junior liens on property resulting directly from a private sale, the date of sale is deemed to be the date on which title to the property is transferred, regardless of the date junior liens on the property are divested under local law, and

    C. in the case of divestment of junior liens on property, not resulting directly from a public or private sale, the date of sale is deemed to be the date on which junior liens on the property are divested under local law.

### 5.12.4.4.2                                                                (06-11-2010)
### Review of IRC 7425 Notice

1. Review of the IRC 7425 Notice will be completed by the advisor for timeliness and adequacy.

2. If the notice was not submitted timely, the Notice of Tax Lien will not be impacted by the pending sale unless the United States consents to the sale free of the tax lien or title of the United States in the property. Otherwise the foreclosing lienholder will be required to either:

   - pay the amount of the tax lien in full; or

   - prepare a request to discharge the property from the tax lien.

3. No formal investigation will be required when the items to be sold are consumer goods. A copy of the notice of sale should be given to the person charged with the balance due to decide what further action is required, if any.

**Note:**

If the case does not appear on IDRS, has been reported currently not collectible or is assigned to ACS, the advisor will file accordingly.

**5.12.4.4.3**                                                       **(06-11-2010)**
**Adequacy of IRC 7425 Notice**

1. Once it has been determined that an investigation will be worked, the employee will:

   A. open a NF OI -147 - Non-Judicial Foreclosure on ICS no less than 7 calendar days prior to the date of sale,

   B. include the receipt date of the IRC 7425 notice, and

   C. review notice for adequacy.

2. The notice will be considered adequate if it contains the following information:

   A. Name and address of the person submitting the notice of sale

   B. Copy of each Notice of Federal Tax Lien (Form 668(Y)) affecting the property to be sold, or list containing the IRS area office responsible for filing the lien, name and addresses of the taxpayer, date of filing, and place of filing

   C. Detailed description of the property to be sold including location and any distinctions or particularities as can happen with multiple tracts of land; in the case of real property, inclusion of the street address, city, state, legal description contained in the title or deed to the property, and, if available, a copy of the abstract of title

D. Date, time, place, and terms of the proposed sale of the property; and, in the case of a perishable property sale as described in IRM 5.12.4.5.1, a statement of the reasons the property is believed to be perishable.

E. Approximate amount of the principal obligation, including interest, due the person selling the property, and

F. Description of other expenses (such as legal, selling costs, etc.) which may be charged against sale proceeds.

3. The notice will be considered inadequate if it does not contain the information described in (2) above. In the case of an inadequate notice, the Advisory Advisor will provide written notification via Pattern Letter 1840, Notice of Inadequacy. *Exhibit 5.12.4-1.*

4. Any written notification or other communication should address the issue(s) clearly and in a language understandable to someone unfamiliar with Service terms, acronyms, and jargon.

5. In case of an inadequate notice, the Advisory group manager may, at his or her discretion, consent to the sale of the property free of the lien or title of the United States even though notice of the sale is not given 25 days prior to the sale.

6. In any case where the person who submitted a timely notice does not receive written notification that the notice is inadequate more than five days prior to the date of the sale, the notice will be considered adequate.

7. In situations where the acknowledgement of the notice or inadequacy of the notice is the only issue such that the case will not be entered onto ICS, the AIQ executive will provide alternative methods for the internal tracking of receipts and dispositions.

## 5.12.4.4.4 (06-11-2010)
## Acknowledgment of Notice

1. A written request that the receipt of a notice of sale be acknowledged will be honored. Acknowledgement can be made through the mailing of a duplicate notice, via facsimile as long as the third party is agreeable to receiving same.

2. In accordance with Service wide Delegation Order 5.4, the authority to acknowledge IRC 7425 Notices, and to reject them because of inadequacies, is delegated to the Advisory group manager.

## 5.12.4.4.5 (06-11-2010)
## Disclosure of Adequacy of Notice

1. The Advisory group manager is authorized to disclose to any person who has a proper interest, whether an adequate notice of sale was given. Disclosure may be made either before or after the sale.

2. Any person desiring this information should submit to the Advisory group manager a written request which clearly describes the property sold, identifies the applicable NFTL(s), gives the reasons for requesting the information, and states the name and address of the person making the request.

### 5.12.4.5 (06-11-2010)
### Non-Judicial Sale of Perishable Goods

1. IRC 7425(c)(3) provides for the sale of perishable good. The Code defines perishable goods, describes noticing requirements, and provides sale proceed distribution requirements.

### 5.12.4.5.1 (06-11-2010)
### Definition of Perishable Goods

1. The term "perishable goods" means any tangible personal property which, in the reasonable view of the person selling the property, is liable to perish or become greatly reduced in price or value by keeping, or cannot be kept without great expense.

### 5.12.4.5.2 (06-11-2010)
### Notice of Non-judicial Sale of Perishable Goods

1. If notice of the sale is given, in writing, by registered or certified mail, or by personal service to the Advisory group manager before such sale, the sale will discharge or divest such property of the lien or title of the United States in the property but not the proceeds.

2. The notice of sale of perishable goods shall contain the same information required in IRM 5.12.4.5.

3. In the event of a postponement of the scheduled sale of perishable goods, the seller is not required to notify the Advisory group manager of the postponement. For provisions relating to the authority of the Advisory group manager to discharge property subject to a NFTL in the case where the proceeds of the sale are held as a fund subject to the liens and claims of the United States, please refer to IRM 5.12.3.12.

### 5.12.4.5.3 (06-11-2010)
### Non-Judicial Perishable Sale Proceeds

1. The proceeds (exclusive of costs) of the sale are held as a fund for not less than 30 days after the date of the sale and remain subject to the liens and claims of the United States. Distribution of the fund is in the same manner and with the same priority as the liens and claims had with respect to the property sold.

2. If the seller fails to hold the proceeds of the sale in a fund in accordance with the provisions of IRC 7425(c)(3), the seller becomes personally liable to the United

34

States for an amount equal to the value of the interest of the United States in the fund.

3. The buyer of the perishable property is afforded certain protection. Even if the proceeds of the sale are not held by the seller, but all the other provisions are satisfied, the buyer of the property at the sale takes the property free of the liens and claims of the United States.

**5.12.4.6** (06-11-2010)
**Consent to Sale of Property Free of Lien**

1. A consent to sale IRC 7425(c)(2)shall discharge or divest the foreclosing property of the lien or title of the United States if the United States consents to the sale of such property free of such lien or title. The consent may be granted even if the IRC § 7425(b)(2)(c) notice of sale requirements have not been met. The area, in which the sale occurs, is responsible to determine whether consent will be granted.

2. Consent to the sale may be given when adequate protection is afforded the lien or title of the United States. Protection is considered adequate if,

   A. taxpayer has no equity in the property,

   B. proceeds of sale are substituted as provided in IRC 6325(b)(3)

   C. taxpayer's interest in the property is assigned to the Director, AIQ,

   D. assignment of proceeds in excess of prior encumbrances is secured, or

   E. any other circumstances acceptable to the area.

3. The consent will be effective only if given in writing and shall be subject to such limitations and conditions as may be required by the area and may not be given after the date of the sale.

4. The right to redeem remains even though a consent to the sale is given.

5. The consent to a sale under IRC 7425 will be approved by the Advisory group manager.

6. All payments, directly related to consents to sale, secured by Advisory staff will be applied to the taxpayer's account using Designated Payment Code (DPC) 57. Payments received by a revenue officer should be applied using TC 670 DPC 07.

**5.12.4.6.1** (08-11-2006)
**Application for Consent**

1. Any person desiring the Advisory Group Manager's consent to sell property free of a NFTL or a title derived from the enforcement of a NFTL of the United States in the property shall submit an original and two copies of the information

35

required in Publication 786, Notice of Non-judicial Sale of Property and Application for Consent to Sale, as stated in the section titled, Application for Consent.

2. The information required as stated in Publication 786 can be received from an external source, such as a foreclosure attorney electronically, as long as the electronic transmission includes all of the required information and is submitted with a declaration that the information is submitted under the penalties of perjury. An electronic signature is acceptable. Internally, the information can be forwarded electronically from office to office via secured messaging.

## 5.12.4.6.2                                              (08-11-2006)
## Processing Applications

1. As a general rule, consent may be given without a field investigation if the property is of nominal value, is consumer goods or if the property is real property and the Government's interest is less than the criteria established in IRM 5.12.5.1.1 and LEM 5.12.5 for redemption investigations.

2. If the property is real property and the Government's interest is more than the redemption investigation criteria, the application for consent should be investigated to determine the most feasible administrative action to be taken.

## 5.12.4.6.3                                              (08-11-2006)
## Form of Consent

1. When consent to a non-judicial foreclosure sale is given, the consent letter, prepared in triplicate by Advisory, will contain the following:

   A. name and address of person requesting consent.

   B. restatement of Internal Revenue Code authority (7425(c)(2)).

   C. detailed description of property to be divested.

   D. description of lien(s) to be divested.

   E. unpaid balance of FTL/NFTL, including interest, lien fees, etc.

   F. place and date NFTL filed.

   G. statement that surplus proceeds are subject to the FTL/NFTL of the United States.

   H. signature of Advisory group manager.

2. Copies of the consent letter will be disposed of as follows:

   A. original and duplicate to requestor.

   B. triplicate to be associated with related NFTL.

36

3. When it is determined that consent to the sale should not be given, the Advisory group manager will prepare in triplicate a letter of non-consent containing the following:

    A. name and address of person requesting account.

    B. restatement of IRC 7425(c)(2)

    C. recommended alternate procedure (discharge of property, substitution of proceeds of sale, etc.)

    D. signature of the Advisory group manager.

## 5.12.4.7
## Non-judicial Sale Activities and Tasks

(06-11-2010)

1. Generally, Other Investigations (OIs) to investigate non-judicial sales originate in Advisory. Certain situations may warrant revenue officer involvement. When this occurs, the Advisory Group Manager will assign the OI to a revenue officer field group. This decision will be contingent upon factors such as geographic feasibility and the need for investigative field work. Due to the need for immediate assignment of these cases, OIs will be routed directly to the field revenue officer group working the zip code. The group manager will be required to treat these OIs as priority work. Non-judicial foreclosure OIs will be assigned to a revenue officer expeditiously, to ensure that the Government's interest is not compromised and that the investigation is completed accurately and timely. Non-judicial foreclosure OIs will be exempt from existing case delivery parameters. Consideration should be given to:

- the dollar amount of the liability,

- the type of property involved,

- the economic condition of the particular locality,

- the practical impact of local law, or

- any other significant factor.

2. The only time Advisory needs to review notices of sale is when the notice meets the criteria in (1) above.

3. For notices of sale where investigations will be performed, Advisory should request Area Counsel provide redemption periods applicable under local law, which will be used in determining the time available for a revenue officer to conduct the investigation.

4. A copy of the Notice of Sale will be given to the person charged with the balance due to decide what further action should be taken. If the case does not appear on

IDRS, has been reported currently not collectible or is assigned to ACS, the Advisory file will be noted.

5. As mentioned previously, the Advisory group manager will determine whether to issue an OI to the field or to have the investigation worked by the advisor.

6. The advisor assigned the case will issue an outgoing NF OI - 147- Non Judicial Foreclosure via ICS no earlier than 30 days prior to the scheduled date of sale. Advisory will determine if the fair market value of the property in question exceeds the amount required to redeem, prior to the issuance of a Courtesy Investigation. Sources from which this information can be secured varies; but examples include the tax assessor's office and the foreclosing creditor's attorney.

7. The revenue officer need not attend the sale, unless specifically directed by the advisor. Attendance should be requested only in unusual cases. The necessary information may generally be secured from the seller or seller's agent immediately after the sale.

8. Each area is responsible for establishing the time frame and methodology for following up. However, during the course of an investigation, when the applicant, taxpayer, representative, or IRS employee misses a specific deadline, follow-up is based on meeting the Service's requirements to maintain its standing in the proceeding and should be initiated **no later than** 14 calendar days after the missed deadline. This follow-up includes closing the case if this action is appropriate. Established procedures should strive to provide a minimum of 90 days remaining available to conduct a redemption investigation.

9. The Form 4376, Report of Investigation (IRC 7425 and 2410 USC) will be prepared to provide a basis for a recommendation to exercise the right of redemption.

**5.12.4.7.1**                                                                     **(06-11-2010)**
**Surplus or Excess Proceeds from Non-Judicial Sales**

1. In the event the sale produces an amount in excess of prior encumbrances (surplus proceeds), the employee assigned determines what party at the state level handles these funds. It could either be the party who conducted the sale or another party charged with that responsibility by state law.

2. The purpose of the non-judicial foreclosure sale investigation is to determine whether the proceeds more than fully satisfied the foreclosing party's encumbrance. When this occurs there are two parallel paths to investigate. Either or both may result in action by the Service. One investigation path is whether there are surplus or excess sale proceeds. The other investigation path is whether sufficient equity in the property remains after sale for the Service to consider exercising its redemption rights. Even if there are no surplus or excess

38

proceeds from the sale, sufficient equity in the property may remain to consider redemption.

3. There are two methods the Service has to pursue surplus or excess proceeds.

    A. Issuance of a *Form 668 A, Notice of Levy* will only be considered when a Letter 1058, Final Notice has been issued for all applicable tax periods and the Service has reason to believe that the "holder" of the excess proceeds is not disbursing the funds in accordance with the legal requirements for disbursement of excess proceeds or if we have knowledge that funds are being disbursed to a creditor junior to the IRS secured position. A levy may only include those modules where all Collection Due Process (CDP) appeal rights are extinguished or resolved. If the CDP process has been completed on some but not all modules issue the levy containing only those modules. If the proceeds available will more than full pay the levy and there are remaining liabilities or the liabilities have not been through the appropriate CDP process, the second method must be used.

    B. If the Service cannot levy for the excess sale proceeds, the statutory lien remains and the IRS must look to its rights as a creditor under the laws of the state in which the foreclosure and sale took place. Use *Form 10492, Notice of Federal Taxes Due* where levy is not appropriate. This form will serve as written notice to the settlement attorney or other third party that the IRS may be entitled to excess proceeds. State law controls how and to whom claim for the proceeds is submitted. Some but not all states require the party distributing the proceeds to ensure distribution using the priority order the junior liens attached to the property prior to the foreclosure sale. Sometimes an interpleader suit is initiated by the party responsible to distribute the funds to determine who has rights to the funds. Questions should be addressed to Area Counsel.

4. All payments, directly related to non-judicial sales, secured by Advisory staff will be applied to the taxpayer's account using Designated Payment Code (DPC) 57. Payments received by a revenue officer should be applied using TC 670 DPC 07.

5. The employee's investigation should determine if there is a problem with the distribution of the funds and if appropriate recommend action by Area Counsel.

**5.12.4.7.2**                                                  **(06-11-2010)**
**Right to Redeem Property Sold at Non-judicial Sale**

1. IRC 7425(d) provides for the redemption by the Government of real property sold in a non-judicial proceeding when such sale is made to satisfy a lien that is prior to the United States. The period for redemption is 120 days, or the period provided by State law, whichever is longer.

2. If the sale is of real property, based on assignment of the investigation, either the advisor or the revenue officer will determine whether to recommend the exercise of the right of redemption. Form 4376, Report of Investigation (IRC 7425 or 2410 USC), will be used for this purpose. This process may also require assistance from a Property Appraisal and Liquidation Specialist (PALS). The final review and processing of Form 4376 is the responsibility of Advisory. When a revenue officer and/or a PALS is involved in the investigation, it is essential that all required documentation be included with Form 4376 when forwarding the results of the investigation to Advisory.

## 5.12.4.7.2.1 (06-11-2010)
## Redemption Investigations

1. Redemption investigations are found in IRM 5.12.5. That IRM covers the investigation leading up to the decision to redeem, the redemption itself, and the sale of the redeemed property.

## 5.12.4.7.2.1.1 (06-11-2010)
## Upset Bidding

1. Upset bidding after a foreclosure sale is allowed in some states like North Carolina. An upset bid is a recorded bid placed after a foreclosure sale has ended. It is higher than the highest bid received at the actual foreclosure sale. This type of bidding can cause confusion when conducting a redemption investigation because it impacts the person from whom the IRS would redeem the property. An upset bid extends the bidding period but does not change the sale date which IRS uses to start the redemption period. Consult Advisory and Counsel when encountering upset bidding when considering redeeming property.

## 5.12.4.7.2.1.2 (06-11-2010)
## Upset Price

1. The upset price, also called the judgment amount or minimum bid, is what the lender is owed on the property. This sum usually includes the outstanding loan and any interest and fees accumulated since the start of the foreclosure process. It is a bid made after a judicial sale but before the successful bid at the sale has been confirmed, larger or better than such successful bid, and made for the purpose of upsetting the sale and securing to the "upset bidder" the privilege of taking the property at this bid or competing at a new sale.

## 5.12.4.8 (06-11-2010)
## Redemption

1. Redemptions and redemption investigations are covered in IRM 5.12.5.

2. IRC § 7425(d) provides the Internal Revenue Service the right to redeem real property sold in nonjudicial foreclosure action by a third party which has a priority over the Notice of federal Tax Lien.

3. Title 28 U.S.C. § 2410(c) provides the United States the right to redeem real property sold in a judicial foreclosure to satisfy a lien that is prior to that of the United States.

4. The time period for a redemption after a foreclosure sale with respect to either a nonjudicial or judicial foreclosure is 120 days or the period allowable for redemption under State law, whichever is longer.

5. IRS redemptions can benefit both the government and the taxpayer. The purpose of redemption is to pay off the foreclosing instrument and apply funds to the taxpayer's liability. The key to a successful redemption case is locating a guaranteed purchaser willing to advance a deposit generally in the amount of 20 percent of the amount bid.

**Exhibit 5.12.4-1**
**Letter 1840 (DO)**

**Letter**
**1840 (DO)**

Internal Revenue Service       Department of the Treasury

Director, Advisory Insolvency and Quality (AIQ)

Date:                          In re:


                               Person to Contact:


                               Contact Telephone Number:


*Information Copy Only*


We are returning your notice of non-judicial sale because it does not contain adequate information. This letter is a NOTICE OF INADEQUACY , which we are required to

**Letter**
**1840 (DO)**

send to you. We have indicated either missing and/or incorrect information in the boxes checked below.

☐          The name and address of the person submitting the notice of sale.

☐          A copy of each Federal tax lien affecting the property to be sold, or

        a. The location of the IRS Area office that issued the lien.

        b. The name and address of the taxpayer, and

        c. The date and place the lien was filed.

☐          A detailed description of the property to be sold including the location of the property (if real property), must include the street address, City, State, the legal description contained in the title or deed to the property and, if available, a copy of the abstract of title.

☐          The date, place, time, and terms of the proposed sale.

☐          The approximate amount of the principal obligation, including interest due the person selling the property and a description of other expenses that may be charged against the sale proceeds.

☐          Other:_

**Letter**
**1840 (DO)**

Please resubmit your notice and all required documentation with the copy of this letter attached within sufficient time so that we receive it at least 25 days before the sale.

Please resubmit your notice along with a copy of this letter and the necessary information to consider your notice as being adequate. The 25 day notification period (above) begins upon receipt of an adequate notice of non-judicial sale. For additional information, please refer to Publication 786, Instructions for Preparing a Notice of Non-judicial Sale of Property and Application for Consent to Sale.

Strip in "Director, AIQ, (City) Area" in bottom left corner (face only) aligned with form number ( $1/2''$ left, $3/8''$ bottom margin). (10 pt News Gothic Bold)

(Choice of facsimile, hand or stamped signature to be determined by using office. Area will strip in facsimile signature if one is requested.)

(over)

Letter 1840 (DO) (Rev. MM-YY)

In case we find it necessary to contact you, please include your name and a daytime telephone number and/or email address in your response. If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

Case 4:14-cv-00613-BP    Document 80    Filed 02/17/17    Page 43 of 58

Letter
1840 (DO)

Advisory Group Manager


Enclosures:

Notice of Non-judicial Sale

Copy of this letter


Letter 1840 (DO) (Rev.MM-YY)


21a.)  That Plaintiffs have knowledge and believe that South and Associates did not contact the IRS and send in the detailed accounting of the credit bid and the disbursements of the proceeds from the subject foreclosure sale which is the subject of this instant court.


**Regarding Defendants rights to challenge assignments:**


22.)  That in **In re: Walter W. Lacey v. BAC Home Loans Servicing, LP et al,** *U.S. Bankruptcy Court , D. Massachusetts, (2012).*: stated:


*"This Court concludes that the Debtor has standing to challenge the validity of the foreclosure sale to the extent that there is an issue as to whether the entity conducting the foreclosure sale was the actual holder of the mortgage by way of assignment at the time of the notice and sale.* ***See*** ***Ibanez, 458 Mass. At 651, 941 N.E.2d 40.*** *("there must be proof that the foreclosure was carried out by a party that itself held the mortgage...the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have authority to foreclose under the power of sale...").* ***(See also*** ***Bailey v. Wells Fargo Bank, NA (In re Bailey), 468 B.R. 464 (Bankr. D.Mass. 2012)*** *(holding that*

44

*the debtor had standing because her argument was not based on the breach of an underlying contract to which she was not a party; instead, her argument was aimed at the ownership of the mortgage at the time it was purportedly assigned).*

23.)    That These fraudulent claims and actions of foreclosing parties all around the country have somehow given attorneys and courts a sort of mass amnesia.  Every assignment of a loan in the Mobile County Recorder's Office over the past ten years has been done with a recording of an assignment of the Deed of Trust or Mortgage.  No Promissory Note, but with the security instrument by itself.  The Deed of Trust is a worthless piece of paper without the ownership and legal possession of the evidence of the debt Promissory Note.  The Promissory Note is essential it is representing the debt.

24.)    That the Deed of Trust ("Mortgage") is incidental to the deal.  There must have been money changed hands but collateral is not a requirement.  Promissory Notes were the object of the sale of loans for 300 years before this nonsense started.

**(Carpenter v Longan US Sup. 1872)  (***A Deed of Trust does not convey ownership of the loan***" (Graham v Oliver, 659 S.W.2d 601; Missouri Court of Appeals 1983)**

*In Butler v. Deutsche Bank Trust Company, et al., 2012 WL 351560 (D. Mass). Judge Woodcock stated:*

*However, "the question of whether [a mortgagor has] standing to challenge [an] assignment is different from the question of whether [he has] standing to challenge the foreclosure on the basis that [the foreclosing entity] did not properly hold the mortgage at the time of the foreclosure." **Wenzel, 841 F.Supp.2d at 479 n. 16**. A number of decisions have held that mortgagors have standing to challenge a foreclosure sale as void due to an allegedly invalid claim of legal ownership and possession the alleged Promissory Note. **See in re Lacey, Bankr.No. 10-19903-JNF, 2012 WL 2872050, at *16-17 (Bankr.D.Mass.   July 12, 2012); Rosa v. Mortg. Elec. Sys. Inc**., 821 F.Supp.2d 423, 429 n. 5 (D.Mass.2011).*

*The Massachusetts Supreme Judicial Court has held that "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure…is void." **Ibanez, 941 N.E.2d at 50**. A wrongful foreclosure action may be brought to set aside a void foreclosure. **See Rogers, 47 N.E. at 604** (allowing mortgagor in tort action who was foreclosed upon in a void foreclosure to elect between full damages or recovering the property). Consequently, a mortgagor may bring a wrongful foreclosure action to set aside a foreclosure conducted by an entity that was never a person entitled to enforce.*

*Mortgagors challenging foreclosure sales that are void due to invalid claims have standing to do so because they have demonstrated "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendants*

*actions, and a likelihood that prevailing in the action will afford some redress for the injury."* **Antilles Cement Corp. v. Fortuno**, *670 F.3d 310, 317 (1st Cir.2012)* **(quoting Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council**, *589 F.3d 458, 467 (1st Cir.2009))*. *In* **In re Bailey**, *Bankruptcy judge Boroff succinctly stated why mortgagors such as* **Butler** *meet the standing requirements:*

*"The injury to the [mortgagor] is the purported termination of her equity of redemption in the Property by a party who had no authority to foreclose that equity of redemption. If [the foreclosure entity], as is the allegedly invalid foreclosure by [the foreclosing entity] that constitutes the [mortgagor's] claimed injury. Should the Court determine that the Foreclosure Sale is void, the [mortgagor] will retain the equity of redemption –an interest in the Property that cannot be lightly disregarded."*

**In re Bailey**, *468 B.R. at 475-76. "To reject any argument which pertains to "the validity of claims" out of hand would eviscerate the holding of* **Ibanez** *and deprive mortgagors of the most valuable remedy they have to protect their equity of redemption.*

**(See Exhibit H- Tenney v The Certificateholders of Citigroup Mortgage Loan Trust et al., APP. Ct. Kansas: Case No. 110.359; holding that Standing may be challenged at any time.)**

25.) That the right to a tribunal free from bias and prejudice is based on the Due Process Clause. Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his/her property, <u>then the judge has engaged in the crime of interference with interstate commerce</u>; the judge has acted in his/her personal capacity and not in the judge's judicial capacity.

**(See U.S. v. Scinto, 521F.2d 842 at page 845, 7th circuit 1996)**

26.) That it is important to note that in this instant case that neither new "Stanger to the Deal" Ocwen Loan Servicing, LLC or GMAC Mortgage, LLC has ever voluntarily, nor was ordered by the court to prove up in their answer to Plaintiffs' Complaint the legal negotiation, transaction and agreed upon Consideration and Delivery necessary to complete the purchase of a Promissory Note in .

27.) That the Common Imposter Payees' defenses include using citations which would bar Defendants from challenging the fraudulent assignments, PSAs, foreclosures etc. because foreclosed parties are a 3rd party to what is done with the Negotiable Note and fraudulent or not, the challenge is not allowed. However, there is a plethora of cases that note the exception will always be that if the challenge is based on fraud and the challenge if won will prove void the claim of right to collect and declare default, then

the claim that Plaintiffs can't challenge a non-judicial foreclosure of their home by proving the foreclosure will be void is simply untrue.

28.) But, what of attorney Frank Lipsman's content in the "updates" of the GMAC Mortgage, LLC court ordered updates of what is going on in the GMAC/ResCap Bankruptcy in the 2nd District Bankruptcy Court?

28A. None of Mr. Lipsman's or Mr. Shifer's (the attorney for the ResCap (Residential Capital Liquidation Trust, LLC owner and court representative of GMAC Mortgage, LLC) notices to "Whoever" ever mention the subject property either by address or by legal description, or by the alleged Borrower's name. The Borrowers are being called creditors when GMAC Mortgage, LLC does not owe the Borrowers any money. There is no mention of why the Borrowers are being represented by the same shell Limited Liability Company that was created by and is representing the 51 Debtors and why is that not a conflict of interest. This court did not see that the subject property was not claimed as an asset in this Bankruptcy. What bias could cause a judge to ignore two bizarre claims of Chain of Title that don't even include the same entities and that both claims don't conclude with GMAC Mortgage, LLC as the last owner of the loan?

*(See Exhibit A: Forged copies of Promissory Notes with undated indorsements) (See Exhibit C: Recorded Documents and instruments forming a broken Chain of Title) (See Exhibit B: Dino Agnos affidavit)*

28.B. Plaintiffs state definitively that GMAC Mortgage, LLC had no right to collect money from Plaintiffs. Plaintiffs were never in default on payments with GMAC Mortgage, LLC. That GMAC Mortgage, LLC had no right to declare default, and therefore there could never have been a valid and legal foreclosure. The state courts cases (the first was filed on 10/19/2011 in contradiction to the courts recitation that the Borrower had not filed a suit before the bankruptcy brouhaha) and the federal court did not have jurisdiction nor discretion to decide that somehow the Plaintiff's loan and home are somehow tied up in this scheme or artifice to hide and veil fraudulent acts committed before and within a Federal Bankruptcy Court. There are no properties in the Bankruptcy Court as assets. There are only Servicing Rights which, while they are very lucrative, do not convey ownership of the loan to a new or old Servicing Rights purchaser. Yet, the Ocwen owned real estate firm Hubzu put the subject property of Plaintiffs on the market to sell the house immediately after this court declared a stay although it had no subject matter jurisdiction. Ocwen and Walters are foreclosing on homes and selling them using only servicing lists and debt collection agents declaration of default. That is not conclusory. Plaintiff is in contact with a dozen alleged Borrowers facing exactly each of the GMAC Mortgage, LLC led enterprise artifices defrauding the federal courts. Plaintiffs foreclosure is void. This happened ab initio in Oct. 2011. The Plaintiffs' home cannot even have been placed into this bizarre bankruptcy.

C. In the ResCap/GMAC Bankruptcy case all complaints from Borrowers are ruled on by The ResCap Liquidating Trust which was created to represent the 51 closely related Debtors. Under the rules that have been received by these Plaintiffs, only from the

ResCap Liquidating Trust and not one single communication from Judge Glenn Martin's Southern District of New York Federal Bankruptcty Court, the alleged Borrowers contesting their foreclosure as fraudulent, have to file a proof of claim of a debt against any of the 51 Debtors, yet the alleged foreclosing party cannot owe the Borrower money. Even if the foreclosing party Debtor was legitimate the Promissory Note has been paid off.

D. The mediator of these proof of claims that some Borrowers do send is The Rescap Liquidating Trust, LLC an entity that was formed to represent the 51 debtors all related entities to Residential Capital Lending (ResCap), GMAC Mortgage, LLC, Ally and Ditech, there are 51 in all. Ownership of all of these companies have some related ownership to all of the others. Every Borrower that has sent in a proof of claim has lost his case, ruled on by the ResCap Liquidating Trust, LLC. The main reason that given is that the Debtor/Creditor/Obligor allegedly cannot challenge where their loan even is. Which is not true.

E. The ResCap Liquidating Trust, LLC represents the Debtors and the "Borrower Creditors" in the GMAC/Rescap Bankruptcy. Alleged Borrower did not agree to forced representation. Every Proof of Claim sent in by borrowers in the bankruptcy has been denied. Each and every denial of any alleged Borrower's purported "proof of claim" has been adjudicated by The ResCap Liquidation Trust, LLC, a company which was created by the 51 filed Debtors to represent the 51 Debtors in this freakish Bankruptcy. Having the Debtor's own LLC and its' many attorneys in charge of the fate of the alleged Borrower's legitimate claims is an elementary and gross violation of the Due Process Clause of the U.S. Constitution 5th Amendment and Article III of the U.S. Constitution.

F. The Plaintiffs have **_never_** received any notice of any kind from the Bankruptcy Judge Martin Glenn or the Region Two Federal Trustee who is directly responsible to the U.S. Department of Justice. Until the month of May, 2016 Plaintiffs have never heard directly from the Rescap Liquidating Trust, LLC. Plaintiffs have only been noticed by Kansas City attorney Frank Lipsman who has made every crazy Lender claim possible since this case first filed in the 16th Circuit Court of Jackson County in 2011 in the last six soon to be seven, years. Plaintiffs have found no definitive proof that GMAC Mortgage, LLC, a company that had no ownership in any mortgages among its assets when it filed Bankruptcy, can claim a property that was fraudulently foreclosed upon in 2011. Plaintiffs cannot divine what the litany of Frank Lipsman's updates even mean. Plaintiffs' rights under the justice clause which includes the 5th and 14th Amendments to the U.S. Constitution and Article III of the U.S. Constitution. The 51 Debtors and their liquidation LLC are the sole representatives of the alleged Borrowers. The accused are representing the accusers. This government and court system protection of Servicers claiming to be "Lenders" is tearing at the very fabric of American society and the constitutional guarantees of its' citizens civil rights.

29.) That even Her honor Judge Phillips has in this court stated "that only origination business (which means of course "future mortgage creation") and servicing rights have

been sold out of the Bankruptcy. The reason is there are no real world Promissory Notes remaining with any of these originators. This court placed a stay of Plaintiffs case in this court because of these "unsubstantiated claims. But, even if true, this fraudulent foreclosure with two distinctly different Chains of Title, presented as a ludicrous pile of alleged "evidence" by GMAC Mortgage, LLC a company whose registration with the Missouri Secretary of State clearly states "is not qualified to do business in the state of Missouri. (See Exhibit D: *relevant Missouri Secretary of State filings*)

The same GMAC Mortgage, LLC which has never had to produce concrete and substantive claims of ever having invested any money in the alleged Promissory Note, nor has GMAC Mortgage, LLC, claimed at any time to have suffered an Injury in Fact that is fairly traceable to the Plaintiffs and which injury, if claimed, and receives a favorable ruling by the court could be redressed. The claims of GMAC Mortgage, LLC's right to collect money or foreclose are heavily based on "multiple meaningless assignments" of an alleged Deed of Trust which do not convey ownership of the Promissory Note under any circumstances (***Carpenter v Longan, US Sup. Ct. 1872***) (***Graham v Oliver***, *MO. App. 1983*). All assignments leading to GMAC Mortgage, LLC ownership of the alleged Deed of Trust are signed by the debt collector law firm South and Associates personnel, or GMAC Mortgage, LLC employees, including notorious Robo-Signor Jeffrey Stephan who has described in sworn deposition his position as team leader of forging as many as 10,000 fraudulent assignments of security instruments per MONTH for more than ten years. Frank Lipsman, counsel for GMAC Mortgage, LLC, in answer to Discovery in 2013 revealed that Jeffrey Stephan had worked as an employee with GMAC Mortgage, LLC until 2013, when he went to work for Ocwen Loan Servicing, LLC which has sent letters to Plaintiffs claiming to be a Servicer for Servicer GMAC Mortgage, LLC. If this insider manipulation is not a cause for extensive suspicion of every part of GMAC Mortgage, LLC's fairy tale, then no effort has been made by the court to read Plaintiffs' five years of evolving and repeating claims that are unassailable to anything, but the truth.

*See Exhibits J & Ja: (Jeffrey Stephan's signed assignment of the alleged Beebe Deed of Trust which was a nullity and two sworn depositions of Jeffrey Stephan)*

30.) That there has never been a notice from the Federal Bankruptcy Court Judge or Federal Trustee of any kind sent to either Plaintiff. In reading the ResCap version of what's going on, the Borrowers may continue lawsuits, but can't ask for more than the release of their homes, which can't be in the bankruptcy due to the RICO styled Enterprise which has been, and still is, and will continue into the future hiding the fact that they have no homes or other properties or assets. GMAC Mortgage, LLC, and the other 50 Debtors and all persons or entities that have a relationship of any kind with the Rescap Resolution Trust LLC have all committed and are still committing Bankruptcy fraud pursuant to Title 18 U.S.C. § 157; and wire bank and mail fraud pursuant to 18 U.S.C. §§ 1341, 1343, and 1344.

31.) That Plaintiffs are filing a similar Rule 12 (b)(1) Motion to Dismiss for Lack of Standing of the person accused of the action and therefore lack of court Subject Matter Jurisdiction in Judge Martin's Federal Bankruptcy Court's Case: No.12-12020 (MG). As well, to the Region 2 Trustee's website, there is a REPORT BANKRUPTCY FRAUD Button on the Department of Justice page of the website. Reporting this will be done also.

32.) That Plaintiffs also plan to file an amended lawsuit in this instant court case to add complaints and defendants for the plethora of post wrongful and illegal foreclosure actions, including bankruptcy fraud counts against GMAC Mortgage, LLC, Frank Lipsman, Joseph Shifer, and South and Associates (Southlaw) and individual South attorneys. The amended complaint will include the Fair Debt Collections Practices Act violations outlined above.

33.) A hybrid adversarial lawsuit will be filed in the 2nd District Federal Bankruptcy Court against Frank Lipsman, GMAC Mortgage, LLC (and under several fictitious names), Ocwen Loan Servicing, LLC, South and Associates; the ridiculously named ResCap Liquidation Trust, LLC and others. But, regardless of any bar date claimed for disputes by the illegal enterprise planned and executed by whomever actually is in charge of GMAC Mortgage, LLC, The uninvestigated Standing of GMAC Mortgage, LLC and thus this court having lacked Subject Matter Jurisdiction over the alleged foreclosure must be dismissed, overturned and declared a void judgment which was no more than a nullity and rightful ownership returned to the rightful owners. Ruling without jurisdiction demands this as Lack of Standing once determined cannot be repaired. All damages to the property and the owners need be freed from this irresponsibly long running case in order to uphold the law. That is all that jurisdiction that this court has. This court has no discretion to make a decision or to perpetuate the waste and deterioration to the subject property once worth $500,000.

*(See Exhibit I: Then and Now photos of the property at 4101 NE Hampstead Dr, Lees Summit, MO 64064)*

34.). Plaintiffs know that Frank Lipsman (who has been responsible for all of the information that the Plaintiffs and this court have seen) has intentionally communicated inaccurately that the subject property or the subject Note have traveled a path that could not in any conceivable way have ended up as an asset in this sham bankruptcy fraud. Mr. Lipsman has deceived and misrepresented GMAC Mortgage LLC's rights to transact banking activities in Missouri which has never had the right to do business in Missouri. Mr. Lipsman has violated the statutes regarding "interference with interstate commerce" repeatedly.

35.) Frank Lipsman is a participant in a racketeering enterprise which has devised and is operating a scheme or artifice to conceal the true intent to steal homes with no paperwork while protected by a series of lies that are so outrageous that no believes they would be stupid enough to tell. Plaintiffs have read Frank's filings of Notice and progress reports and don't see any evidence that any of it pertains to Plaintiffs or the

subject property, although the sham foreclosure does help to veil the sleight of hand. Everything that Plaintiffs can find points to the only assets being sold are servicing rights and that the Notes were long ago securitized and went missing before the bankruptcy. The bankruptcy fraud laws really don't allow a stolen house to be a legitimate asset that can be protected. Frank Lipsman's answers to earlier Discovery and physical evidence should be very helpful in the Bankruptcy Fraud case.

36.) That Plaintiffs complain that the GMAC ReCap bankruptcy fraud perpetuated by Frank Lipsman, Joseph Shifer, and Southlaw is an attempt to hide a scheme or artifice using fraudulent claims in a United States Federal Bankruptcy Court in violation of the following statutes among others:

## FRAUD AND BANKRUPTCY FRAUD UNDER FEDERAL STAUTUTES 18 U.S.C. §151, §152, §154, §155, §156, §157, 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1344, 18 U.S.C. § 1345, 18 U.S.C. § 1348, 18 U.S.C. § 1349

A few definitions:

A.      18 U.S.C. § 152.  Concealment of assets; false oaths and claims; bribery.

This statute consists of nine crimes, all of which require proof of "knowingly and fraudulently" doing something in a bankruptcy context, namely: (1) concealing property of the debtor's estate from the court; (2) making a false oath; (3) committing perjury; (4) presenting a false proof of claim against a debtor's estate; (5) receiving property from the debtor's estate with the intent to circumvent bankruptcy proceedings; (6) taking a kickback for forbearing on a claim against the debtor; (7) while acting as an agent, transferring or concealing property of an individual debtor or corporation; (8) "cooking the books" to hide a debtor's financial affairs; and (9) withholding property or financial affairs from the United States Trustee or court.

B.      18 U.S.C. § 157.  Bankruptcy fraud.

This statute is a product of the Bankruptcy Reform Act of 1994 and was designed to cut down on the amount of "gamers" that were using, or attempting to use, the bankruptcy process as a way to further a fraud scheme. This fraud can come in several forms, such as schemes involving insider depletion of assets over a period of time and the use of the automatic stay to conceal fraudulent activity. The elements of this offense are:

1. The defendant has devised or has intended to devise a scheme or artifice to defraud another; and

2. The defendant, for the purpose of executing or concealing the scheme or artifice or attempting to do so,

(a) files a petition under title 11; or

(b) files a document in a proceeding under title 11; or

(c) makes a false or fraudulent statement in connection with a proceeding under title 11 or a proceeding the defendant falsely asserts is pending under title 11.

Any defendant who undertakes a fraud scheme against anyone and then carries out or conceals the scheme by filing for bankruptcy or by filing any documents in the bankruptcy, violates this statute. This section is also applicable to the defendant who tries to defraud someone by falsely asserting that a case is in bankruptcy in order to forestall the victim's actions. The essence of this statute is the existence of a fraud scheme or attempted fraud scheme and any use of the bankruptcy system to carry out the scheme.

For example, this statute should be applicable to petition mills that are set up to defraud the landlord of a few months rent, or to a bust out scheme. Likewise, a defendant who is actively defrauding anyone violates this statute by filing bankruptcy to delay or conceal the fraud.

Plaintiffs also, will pursue case law from the wire, bank, and mail fraud statutes, 18 U.S.C. §§ 1341, 1343, and 1344, which have similar language and will be useful in determining the scope of the statutes.

**Just why is it impossible for GMAC Mortgage, LLC to have ever been the Holder in Due Course (UCC statute) of any loan of Plaintiff Tim Beebe?**

A. The Originating Lender on the Note and Deed of Trust of the alleged subject loan of this case is Lend Tech Mortgage Funding, LLC, which does not claim to have funded this loan or any loan. In fact, Lend Tech Mortgage, LLC denies every doing any business with GMAC Mortgage, LLC, nor having any membership, relationship or interacting in any with Mortgage Electronic Registration, Inc., or of ever meeting or hearing of Yvette Ward of SGB Corporation d/b/a West America Mortgage Company (a registered

52

fictitious name in Missouri), nor ever having given or recorded a Power of Attorney to Yvette Ward for any reason whatsoever. (*See Exhibit B: Dino Agnos Business Manager of Lend Tech Mortgage Funding.*)

B. GMAC Mortgage, LLC responded to 5 RESPA QWR by sending, over time, 4 different copy versions of what is claimed to be the indorsed original Promissory Note. Then another that was filed in this court by Frank Lipsman counsel for GMAC Mortgage, LLC. If we take them at face value (Plaintiffs do not) they do in fact form an alleged Chain of Title.

### The Chain of Title for the Promissory Note based on undated indorsements by signors without the right to sign.

**06-4-2004:** Lend Tech Mortgage Funding, LLC allegedly originated the loan and it is that name on the Promissory Note and Deed of Trust. Lend Tech Mortgage Funding, LLC does not substantiate any contracts or sales of Promissory Notes to GMAC Mortgage Corporation or GMAC Mortgage, LLC.

**All remaining Indorsements are on the signature page of the various versions. All versions are represented to be copies of the one and only original alleged Promissory Note.**

A. Undated: 1st indorsement on the signature page of the copy of an alleged Promissory Note is by Yvette Ward **"Assistant Secretary"** for SGB Corporation DBA West America Mortgage Company a Colorado Corporation (West America Mortgage is registered as a fictitious name with the MO Secretary of State's Office) **"Attorney in Fact"** For Lend Tech Mortgage Funding, LLC a Missouri Corporation.

But this means that Lend Tech Mortgage Funding, LLC gave a recorded Power of Attorney to Yvette Ward empowering her to basically sell a $380,000 negotiable instrument. Dino Agnos denies ever hearing of Yvette Ward and testifies that Lend Tech Mortgage Funding never made a Power of Attorney to anyone. (***See Dino Agnos affidavit***) Multiple internet searches for Yvette Ward have not found her.

B. Undated: 2nd indorsement made by Vicky Ward as **"Banking Clerk"** for SGB Corp dba West America Mortgage Corporation a Colorado Corporation to GMAC BANK;

B-1. On two other GMAC Mortgage, LLC versions of a copy of the same Note it is Joyce Grudzien placed differently on the signature page (Vicky Ward is now gone) who indorses as **"Vice President"** for SGB Corporation dba West America Mortgage Corporation a Colorado Corporation indorsing the alleged Promissory Note to GMAC BANK.

C. 3rd Undated Indorsement from Joanne Wright (rubber stamp) **"Acting Agent"** of GMAC BANK to GMAC Mortgage Corporation without recourse.

D. 4th Indorsement undated from J. Vollmer **"Limited Signing Officer"** GMAC Mortgage Corporation to "US Bank National Association, as trustee" without recourse

GMAC Mortgage Corporation. US Bank National Association, as trustee is not an eligible indorsee.

This indorsement does not name a Trust which US Bank National Association represents. A Trustee with no Trust would have no money to legally purchase a Promissory Note.

A Real Estate Mortgage Investment Conduit (REMIC) trust has very strict rules and only the trust raises the money to buy mortgages. This indorsement is not dated or complete. But, it seems it was done to make it appear as the last indorsement on the copies of a fraudulent instrument.

*See Exhibit A: Forged copies of an alleged Promissory Note with undated indorsements)*

GMAC Mortgage, LLC has lamely claimed to be a successor by merger to GMAC Mortgage Corporation. But, this inept attempt at what the media terms robo signing (*the real terms are counterfeiting and forging*) seems to indicate that all of this happened in June of 2004.

GMAC was not registered with the MO Secretary of State until 2006 and did attempt a merger with GMAC Mortgage Corporation in Delaware and then register the merger with the MO Secretary of State in 2006 which it did file. But, the same day the MO. SOS filed a determination that "the surviving entity GMAC Mortgage, LLC is not authorized to do business in Missouri.)

There is no correction filed after that. Plaintiffs conclude that GMAC Mortgage, LLC has been collecting money and doing business in Missouri for nine years with no authorization to do so. This would be a violation of the rules of the FAIR DEBT COLLECTION PRACTICES ACT (FDCPA).

So the undated indorsements take the fake note from *Lend Tech* to *SGB Corp. dba as West America (West America is a fictitious name)* to GMAC BANK, (also a fictitious name) *GMAC Mortgage Corporation* to *US Bank as Trustee*. That is the chain of alleged indorsements on the alleged copy or copies of the alleged Original Promissory Note. GMAC Mortgage, LLC is not even mentioned on the copy they decided to use to file into this court.

But, since 1995 these Servicers pretending to be Lenders have been committing fraud on the court by assigning Deeds of Trust to one another and calling it a legal transfer of ownership of the Promissory Note.

Below is the Chain of Title of Assignments of the *Security Instrument* (In non-judicial foreclosure state Missouri in this case) the alleged Deed of trust.

6-11-2004-    Tim Beebe receives Warranty Deed from Seller Richard Sharp

| | |
|---|---|
| 6-11-2004 | Tim Beebe _Allegedly_ signs Promissory Note and Deed of Trust naming Lend Tech Mortgage Funding, LLC as Lender |
| 2-25-2008 | Assignment of Deed of Trust by Grantor Mortgage Electronic Registrations Systems, Inc. acting soley as nominee for Lend Tech Mortgage Funding, **Inc**. (Lend Tech was an LLC to Mortgage Electronic Registration Systems, Inc. soley as nominee for GMAC Mortgage Corporation. (the **Dino Agnos affidavit** clearly states that Lend Tech Mortgage Funding, LLC never had any relationship whatsoever with GMAC Mortgage, LLC; Electronic Registration Systems, Inc.; or GMAC Mortgage Corporation) This Assignment was signed by notorious and confessed Robo Signer **_Jeffrey Stephan_** employee of GMAC…..(Mortgage Corporation, Mortgage, LLC, Acceptance Corporation and other similarly named entities. (**_See Jeffrey Stephan sworn depositions exhibit_**) |
| 1-28-2011 | Assignment from Mortgage Electronic Systems, Inc as sole nominee for Assignor Lend Tech Mortgage Funding LLC and GMAC Mortgage Corporation to Assignee GMAC Mortgage Funding, LLC |
| 12-31-2011 | Trustee's Deed from South and Associates to GMAC Mortgage, LLC |
| "MERS" | from Lend Tech Mortgage Funding, LLC (without authority) to MERS for GMAC Mortgage Corporation to GMAC Mortgage, LLC |

*(See Exhibit C: Recorded documents and instruments creating a fraudulent Chain of Title)*

37.)  That Plaintiffs having absolutely proved that GMAC Mortgage, LLC could never have possibly qualified for Standing to collect money, declare default, or to foreclose in this instant case and Plaintiffs having been fraudulently removed from their home and have had to watch it being subjected to waste and deterioration and suffered great frustration and emotional stress because the concepts of Article III and the 5th Amendment of the constitution were not employed, and the party accused of the action never claimed to be injured.  The veiled cryptic Frank Lipsman status reports were no more than illegal threats **In terrorem**, a legal threat used by Frank Lipsman in hope of compelling Plaintiffs to act out of fear instead of reason.  Frank Lipsman's and Joe Shifer's In Terrorem allusions to sanctions, injunctions, and legal wording that would not be understood by the least sophisticated of readers was a bullying trick to cause these alleged Obligors to quit without resorting to a lawsuit or criminal prosecution. Both of these attorneys were instructing and giving legal advice to their adversarial opponents.  They both knew, and know, that the Plaintiff's remedies could be discovered

and used by Plaintiffs, which had not asked for help from the criminal and truly unpatriotic adversary counsel.

Plaintiffs now contend it was not an error on their part that Lack of Standing to foreclose was not established before this court moved on to the merits of the case and issued orders, dismissed defendants, and allowed the fraudulent and wrongful foreclosure to stand without two parties proving their genuine interest in the proceedings. Plaintiffs state that Article III Standing was not entered into the original U.S. Constitution for the protection of the two parties alone. It was also included to protect the court from injuring itself by ruling without jurisdiction and removing the cloak of immunity of a judge or tribunal. It is a threshold issue. GMAC Mortgage, LLC should never have been allowed to cross the threshold without Standing.

38.) Plaintiffs have read and seen evidence of the most massive fraud this country will ever experience. It is unimaginable how so many courts have missed its significant injury done to over eight million Americans. Even congress is becoming aware of the collusion and corruption, but much too late for so many Americans having suffered from the vile improper administration of Non-Judicial Foreclosure laws and who have been denied their rights pursuant to the Due Process Clauses of the 5th and 14th Amendments and the civil right protection to be sued only by the person entitled to enforce a cause or action against them. *(U.S.C) Civil Rule 17 (A)*

39.) That Plaintiffs contend that this Motion to Dismiss is not a matter over which this court has discretion. If the original answer by GMAC Mortgage, LLC to the original lawsuit did not include a claim of "Injury in Fact" with concrete and substantive proof of any claimed injury, then this court never had an accused party with Standing and therefore it never had Subject Matter Jurisdiction. Plaintiffs' house has suffered waste and deterioration and Plaintiffs have experienced long term emotional distress for six long years for no reason. *(U.S.C) Civil Rule 17 (A)*

40.) That the Plaintiffs will continue down this road wherever it leads, including seeking relief from the citizen which the judge became when ruling without Subject Matter jurisdiction.

a.) That GMAC Mortgage, LLC and it's substituted Trustee the debt collector law firm which was appointed by GMAC Mortgage, LLC failed to provide an accounting and reconciliation of the disbursement of the proceeds of the alleged fraudulent Subject Foreclosure Auction to all interested parties including any Sale Proceeds surpluses which should have gone to the homeowner or deficiencies that might be liabilities to the homeowner and proof that any credit bid used for payment instead of cash at the sale of the homeowner's property and that any such alleged (but never seen perfected) credit bid used for payment at the sale was valid, legal and was used pursuant to Missouri statute.as is required by Missouri.

b.) That the acts described in 40.(a) above are just a sample of the many acts which violated the Fair Debt Collections Practices Act (FDCPA) in this instant case. Despite

the protests and arguments of many attorneys there are several new rulings finding that Bankruptcy law does not exclude the FDCPA. It is not forbidden to proceed with fraud and other injuries in separate District Court cases.

c.) If GMAC Mortgage, LLC cannot explain how they used an alleged Promissory Note as a credit bid to purchase Plaintiffs' house at the fraudulent foreclosure sale and still contends that it physically has possession of that alleged Note instead of turning it over to the Substituted Trustee marked paid, but never recording a reconveyance or in the alternative recording the alleged Promissory Note marked paid, then any alleged Trustee's Deed created and recorded by the debt collection firm South and Associates is fraudulent and void ab initio. Therefore, there was no foreclosure sale and GMAC Mortgage, LLC's claims that it gained ownership over the subject property at 4101 NE Hampstead, Lees Summit, Mo at a non-existent foreclosure sale and it is now an asset in GMAC Mortgage, LLC's Chapter 11 bankruptcy plan is an act of Bankruptcy Fraud and a violation of FDCPA section 1292. Violations of both of the acts described above, which are neither exclusive of the other is the sale of servicing rights to Ocwen Loan Servicing, LLC. The ownership of the servicing rights does not transfer the ownership of the Promissory Note, which inexplicably GMAC Mortgage, LLC still claims to possess. But, this claim cannot be cited in law or statute. The alleged foreclosure sale was purported to give GMAC Mortgage, LLC ownership of the property in order to redress the Injury in Fact that Defendant GMAC Mortgage, LLC never claimed. But no matter how you look at it, GMAC Mortgage, LLC cannot keep the house purchased at foreclosure auction with the alleged Promissory Note as a credit bid and also retain the alleged Promissory Note which is evidence of the debt that was extinguished by the Trustee's Deed.

A.) Of course, no one can say if GMAC Mortgage, LLC is claiming a surplus that is due to Plaintiff's or a deficiency for Plaintiffs which GMAC Mortgage, LLC can sue for. This because, as stated above, there was never an accounting and reconciliation of the disbursements of the sales proceeds by the Enterprise member South and Associates which had collected over $45,000 in Cashier's checks in its own name from Plaintiffs and still felt like it was the proper unbiased party to be the auctioneer Trustee. This too is a violation of the FDCPA.

41.) That should immediate and appropriate measures not be taken to recognize that the alleged foreclosure is a void judgment ab initio and that Lack of Standing cannot be repaired. That GMAC Mortgage, LLC never foreclosed on the property because it never had the right to collect. South and Associates has been, and still is and will be in the future a Debt Collector which violated the FDPCA by taking the Wrongful and Illegal Appointment of Successor Trustee from a "stranger to the deal" and that the Trustee's Deed is nothing more than a void lien on a property that these defendants never had a right to attack. That the Unlawful Foreclosure and the following Self-Help Eviction which is a violation of Missouri statute were fraudulent and shameful. That

the claims by GMAC Mortgage, LLC attorney Frank Lipsman never did any more than to weakly allude that the property was an asset in a bankruptcy, which was never possible. Anyone that was taken in by these misrepresentations and deceptions have not been reading the news or following earthquake magnitude revelations of more massive fraud every day. This all needs to end now.

42.) Plaintiffs were never in Default with any entity herein and specifically never in Default with GMAC Mortgage, LLC or GMAC Mortgage Corporation (PA) which also has never claimed that it had suffered an Injury in Fact which was caused by Plaintiffs and there can be no redress coming from any favorable judgment.

Plaintiffs pray this court to declare the fraudulent foreclosure a nullity with prejudice and sanction all defendants as the court deems necessary in order to deter GMAC Mortgage, LLC, Ocwen Loan Servicing, LLC, and South and Associates and others similarly situated to understand that there are no benefits or profits in committing so many violations of alloidial title law.


Respectfully submitted,


Danny Hammond Pro Se Plaintiff                    Tim Beebe Pro Se Plaintiff


Certificate of Service:  I Danny Hammond swear that I sent the above on 02-17-17 to GMAC Mortgage, LLC Counsel Frank Lipsman by electronic email and prepaid USPS


Danny Hammond